## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TRACEY TRAVIS, individually and on behalf of all others similarly situated, | No. 2:19-cv-11639 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| FORD MOTOR COMPANY, a Delaware corporation, | |
| Defendant. | |

### CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

<u>**Page**</u>

I.    INTRODUCTION ..................................................................................... 1

II.   JURISDICTION ...................................................................................... 6

III.  VENUE .................................................................................................... 7

IV.   PARTIES ................................................................................................. 8

    A.   Plaintiff ............................................................................................ 8

        Tracey Travis ................................................................................... 8

    B.   Defendant ......................................................................................... 9

        Ford Motor Company ....................................................................... 9

V.    FACTUAL ALLEGATIONS ................................................................. 10

    A.   Criminal Investigation ................................................................... 19

    B.   Mechanism of Cheating ................................................................. 20

    C.   Ford's History of Ford's Cheating ................................................. 24

    D.   Scope of New Cheating .................................................................. 26

    E.   Ford advertising ............................................................................. 27

    F.   Economic harm .............................................................................. 29

VI.   TOLLING OF THE STATUTE OF LIMITATIONS ............................ 29

    A.   Discovery rule tolling .................................................................... 29

    B.   Fraudulent concealment tolling ..................................................... 31

    C.   Estoppel ......................................................................................... 31

VII.  CLASS ALLEGATIONS ....................................................................... 31

COUNT 1 VIOLATION OF THE NEW JERSEY CONSUMER
    FRAUD ACT (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*) ................................. 35

COUNT 2 FRAUD BY CONCEALMENT (BASED ON NEW
    JERSEY LAW) ............................................................................................. 37

COUNT 3 VIOLATION OF THE ALABAMA DECEPTIVE TRADE
    PRACTICES ACT (ALA. CODE § 8-19-1 *ET SEQ.*) ................................. 39

COUNT 4 VIOLATION OF THE ALASKA UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION ACT
    (ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*) ........................................ 41

COUNT 5 VIOLATION OF THE ARIZONA CONSUMER FRAUD
    ACT (ARIZONA REV. STAT. § 44-1521 *ET SEQ.*) ................................. 42

COUNT 6 VIOLATION OF THE ARKANSAS DECEPTIVE
    TRADE PRACTICES ACT (ARK. CODE ANN. § 4-88-101
    *ET SEQ.*) ................................................................................................. 43

COUNT 7 VIOLATIONS OF THE CALIFORNIA UNFAIR
    COMPETITION LAW  (CAL. BUS. & PROF. CODE § 17200
    *ET SEQ.*) ................................................................................................. 45

COUNT 8 VIOLATIONS OF THE CALIFORNIA FALSE
    ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500
    *ET SEQ.*) ................................................................................................. 49

COUNT 9 BREACH OF CONTRACT  (BASED ON CALIFORNIA
    LAW) ......................................................................................................... 52

COUNT 10 FRAUDULENT CONCEALMENT (BASED ON
    CALIFORNIA LAW) .................................................................................. 54

COUNT 11 VIOLATIONS OF THE FLORIDA UNFAIR AND
    DECEPTIVE TRADE PRACTICES ACT (FLA. STAT.
    § 501.201 *ET SEQ.*) ................................................................................. 60

COUNT 12 VIOLATION OF THE GEORGIA FAIR BUSINESS
    PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET SEQ.*) ................... 63

COUNT 13 VIOLATION OF THE GEORGIA UNIFORM
    DECEPTIVE TRADE PRACTICES ACT (GA. CODE. ANN
    § 10-1-370 *ET SEQ.*) ............................................................................... 65

COUNT 14 VIOLATION OF THE ILLINOIS CONSUMER FRAUD
    AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS
    505/1, *ET SEQ.* AND 720 ILCS 295/1A) ................................................ 66

COUNT 15 BREACH OF CONTRACT (BASED ON ILLINOIS
    LAW) ......................................................................................................... 69

COUNT 16 FRAUDULENT CONCEALMENT (BASED ON
    ILLINOIS LAW) ........................................................................................ 71

COUNT 17 VIOLATION OF THE MASSACHUSETTS GENERAL
    LAW CHAPTER 93(A) (MASS. GEN. LAWS CH. 93A, § 1
    *ET SEQ.*) ................................................................................................. 76

COUNT 18 VIOLATION OF THE NEW YORK GENERAL
    BUSINESS LAW (N.Y. GEN. BUS. LAW §§ 349–350) ........................... 76

010825-11/1133054 V1

COUNT 19 VIOLATION OF THE OKLAHOMA CONSUMER
PROTECTION ACT (OKLA. STAT. TIT. 15, § 751 *ET SEQ.*) ............... 77

COUNT 20 VIOLATION OF THE PENNSYLVANIA UNFAIR
TRADE PRACTICES  AND CONSUMER PROTECTION
LAW (73 PA. CONS. STAT. § 201-1 *ET SEQ.*) ......................................... 79

COUNT 21 VIOLATION OF THE SOUTH CAROLINA UNFAIR
TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET
SEQ.*) ................................................................................................ 81

COUNT 22 VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
PRACTICES AND CONSUMER PROTECTION ACT (TEX.
BUS. & COM. CODE § 17.4 *ET SEQ.*) ...................................................... 82

COUNT 23 VIOLATION OF THE UTAH CONSUMER SALE
PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET SEQ.*) ................. 87

COUNT 24 VIOLATION OF THE WEST VIRGINIA CONSUMER
CREDIT  AND PROTECTION ACT (W. VA. CODE § 46A-1-
101 *ET SEQ.*) ...................................................................................... 88

    A.    Claims brought on behalf of the other state classes ......................... 90

COUNT 25 VIOLATION OF THE COLORADO CONSUMER
PROTECTION ACT (COLO. REV. STAT. § 6-1-101 *ET
SEQ.*) ................................................................................................ 90

COUNT 26 VIOLATION OF THE CONNECTICUT UNFAIR
TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A
*ET SEQ.*) .............................................................................................. 91

COUNT 27 VIOLATION OF THE DELAWARE CONSUMER
FRAUD ACT (DEL. CODE TIT. 6, § 2513 *ET SEQ.*) ............................... 92

COUNT 28 VIOLATION OF THE HAWAII ACT § 480-2(A)
(HAW. REV. STAT. § 480 *ET SEQ.*) .......................................................... 94

COUNT 29 VIOLATION OF THE IDAHO CONSUMER
PROTECTION ACT (IDAHO CODE ANN. § 48-601 *ET
SEQ.*) ................................................................................................ 95

COUNT 30 VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) ............................. 96

COUNT 31 VIOLATION OF THE IOWA PRIVATE RIGHT  OF
ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE
§ 714H.1 *ET SEQ.*) ............................................................................... 98

COUNT 32 VIOLATION OF THE KANSAS CONSUMER
PROTECTION ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*) ............... 99

COUNT 33 VIOLATIONS OF THE KENTUCKY CONSUMER
PROTECTION ACT (KY. REV. STAT. § 367.110 *ET SEQ.*) ................. 101

COUNT 34 VIOLATION OF THE LOUISIANA UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION LAW (LA.
    REV. STAT. § 51:1401 *ET SEQ.*) ............................................................. 104

COUNT 35 FRAUDULENT CONCEALMENT (BASED ON
    LOUISIANA LAW) ......................................................................... 106

COUNT 36 VIOLATION OF THE MAINE UNFAIR TRADE
    PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-A
    *ET SEQ.*) .................................................................................... 107

COUNT 37 VIOLATION OF THE MARYLAND CONSUMER
    PROTECTION ACT (MD. CODE ANN., COM. LAW § 13-
    101 *ET SEQ.*) .............................................................................. 108

COUNT 38 VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (MICH. COMP. LAWS § 445.903 *ET
    SEQ.*) ........................................................................................ 109

COUNT 39 VIOLATION OF THE MINNESOTA PREVENTION
    OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68 *ET
    SEQ.*) ........................................................................................ 111

COUNT 40 VIOLATION OF THE MINNESOTA DECEPTIVE
    TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48 *ET
    SEQ.*) ........................................................................................ 112

COUNT 41 VIOLATION OF THE MISSISSIPPI CONSUMER
    PROTECTION ACT (MISS. CODE. ANN. § 75-24-1 *ET
    SEQ.*) ........................................................................................ 113

COUNT 42 VIOLATION OF THE MONTANA UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION ACT OF
    1973 (MONT. CODE ANN. § 30-14-101 *ET SEQ.*) ................................ 114

COUNT 43 VIOLATION OF THE NEBRASKA CONSUMER
    PROTECTION ACT (NEB. REV. STAT. § 59-1601 *ET SEQ.*) ............. 115

COUNT 44 VIOLATION OF THE NEVADA DECEPTIVE TRADE
    PRACTICES ACT (NEV. REV. STAT. § 598.0903 *ET SEQ.*) ............... 116

COUNT 45 VIOLATION OF THE NEW HAMPSHIRE
    CONSUMER PROTECTION ACT (N.H. REV. STAT. ANN.
    § 358-A:1 *ET SEQ.*) ...................................................................... 117

COUNT 46 VIOLATION OF THE NEW MEXICO UNFAIR
    TRADE PRACTICES ACT (N.M. STAT. ANN. § 57-12-1 *ET
    SEQ.*) ........................................................................................ 118

COUNT 47 VIOLATION OF THE NORTH CAROLINA UNFAIR
    AND DECEPTIVE ACTS AND PRACTICES ACT (N.C.
    GEN. STAT. § 75-1.1 *ET SEQ.*) ..................................................... 120

010825-11/1133054 V1

COUNT 48 VIOLATION OF THE NORTH DAKOTA CONSUMER
FRAUD ACT (N.D. CENT. CODE § 51-15-02) ...................................... 120

COUNT 49 VIOLATION OF THE OHIO CONSUMER SALES
PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01 *ET
SEQ.*)............................................................................................................ 122

COUNT 50 VIOLATION OF THE OREGON UNLAWFUL TRADE
PRACTICES ACT (OR. REV. STAT. § 646.605 *ET SEQ.*) ................... 124

COUNT 51 VIOLATION OF THE RHODE ISLAND UNFAIR
TRADE PRACTICES  AND CONSUMER PROTECTION
ACT (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)................................................ 125

COUNT 52 VIOLATION OF THE SOUTH DAKOTA DECEPTIVE
TRADE PRACTICES  AND CONSUMER PROTECTION
LAW (S.D. CODIFIED LAWS § 37-24-6)................................................ 126

COUNT 53 VIOLATION OF THE VERMONT CONSUMER
FRAUD ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*) ................... 127

COUNT 54 VIOLATION OF THE VIRGINIA CONSUMER
PROTECTION ACT (VA. CODE ANN. § 59.1-196 *ET SEQ.*)............... 128

COUNT 55 VIOLATION OF THE WASHINGTON CONSUMER
PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010
*ET SEQ.*) .................................................................................................... 129

COUNT 56 VIOLATION OF THE WISCONSIN DECEPTIVE
TRADE PRACTICES ACT (WIS. STAT. § 110.18) ............................... 130

COUNT 57 VIOLATION OF THE WYOMING CONSUMER
PROTECTION ACT (WYO. STAT. § 40-12-105 *ET SEQ.*) .................. 131

COUNT 58 BREACH OF EXPRESS WARRANTY ........................................ 132

COUNT 59 FRAUD ................................................................................................ 133

COUNT 60 NEGLIGENT MISREPRESENTATION ....................................... 134

COUNT 61 UNJUST ENRICHMENT................................................................. 134

REQUEST FOR RELIEF ...................................................................................... 135

DEMAND FOR JURY TRIAL ............................................................................ 136

Plaintiff, Tracey Travis, individually and on behalf of all others similarly situated (the "Class"), alleges the following based upon the investigation of counsel, the review of scientific papers, and the proprietary investigation of experts.

## I.   INTRODUCTION

1.     Plaintiff brings this class action and representative action for a Class defined as:

> "All persons who purchased or leased a Ford vehicle whose EPA fuel economy ratings were less than the fuel economy rating produced by the applicable federal test, including but not limited to the model year 2019 Ford Ranger truck."

2.     These vehicles are hereinafter referred to as the "Affected Vehicles," and include the 2019 Ford Ranger Truck, and on information and belief the F-150 series trucks, and may also include any and all other Ford vehicles.  A mileage "cheat device" is also likely included in all Affected Vehicles, whereby the onboard trip meter continually misrepresents the vehicles' poor mileage to conceal it from vehicle owners, and maintains consistency with Ford's misrepresentations to the Environmental Protection Agency (EPA) during certification testing regarding both the mileage and emissions of the Affected Vehicles.

3.     Ford's motives were twofold, (1) customers choose and pay a premium for fuel efficiency and the resulting savings, and (2) less fuel burned

means less emissions, and therefore more profits under the U.S. environmental regulations.

4.    Plaintiff brings this lawsuit individually and on behalf of the Class because Ford Motor Company engaged in fraudulent and deceptive conduct regarding its fuel-efficiency testing practices, and Ford's tangled web of deception that includes a mileage cheat device. Ford's calculated and intentionally wrongful conduct recently caused the federal government to initiate a criminal investigation into its practices.

5.    Ford has admitted that its newest model of truck, the 2019 Ranger, is the first model that should be investigated by the government. The popular Ford F-150 appears to have the same issue. Indeed, Ford has not described the problem as vehicle specific, and the Class may extend to other Ford vehicles.

6.    Ford deliberately misrepresented or miscalculated certain road testing factors during internal vehicle testing processes in order to report that its vehicles were more fuel efficient than they actually were. In particular, Ford miscalculated something called "Road Load," which is the force that is imparted on a vehicle while driving at a constant speed over a smooth, level surface from sources such as tire rolling resistance, driveline losses, and aerodynamic drag.[1] Ford's internal lab

---

[1] *See* Exhibit 1, https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=34102&flag=1.

tests did not account for these forces, which lead to better—and entirely inaccurate—fuel economy projections.

7.      Despite Ford's own employees questioning its testing practices and the calculations that Ford was utilizing for fuel economy ratings, at least by September 2018,[2] Ford took no action to correct the problems, or alert consumers that their test methods were flawed and that consumers would not get the promised fuel economy.

8.      With respect to its 2019 Ford Ranger, Ford promised that its midsize truck "will deliver with durability, capability and fuel efficiency, while also providing in-city maneuverability and the freedom desired by many midsize pickup truck buyers to go off the grid."[3]  Ford also claimed that it's "All-New Ford Ranger Rated Most Fuel Efficient Gas-Powered Midsize Pickup in America."[4] "With EPA-estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mph combined, 2019 Ford Ranger is the most fuel efficient gas-powered midsize pickup in America."[5]  Ford claimed the 2019 Ranger "is the no-compromise choice for power, technology, capability, and efficiency whether the

---

[2] Exhibit 2, https://www.nytimes.com/2019/02/21/business/ford-emissions.html?module=inline.

[3] Exhibit 3, Statement from Todd Eckert, Ford Truck Group's Marketing Manager, https://thenewswheel.com/2019-ford-ranger-most-fuel-efficient/.

[4] Exhibit 4, https://media.ford.com/content/fordmedia/fna/us/en/news/2018/12/11/ford-ranger-rated-most-fuel-efficient-gas-powered-midsize-pickup.html.

[5] *Id.*

010825-11/1133054 V1

path is on road or off."[6]  Ford knew that to sell the Ranger, it had to tout it had

fuel-efficiency, and a promise that was material to consumers.

9.     There is no question that Ford used the fuel efficiency ratings as a

selling tool to entice consumers into purchasing the 2019 Ford Ranger.  Indeed,

Ford promised that "[t]he adventure-ready 2019 Ford Ranger is the most fuel-

efficient gas-powered midsize pickup in America—providing a superior EPA-

estimated city fuel economy rating and an unsurpassed EPA-estimated combined

fuel economy rating versus the competition.  The all-new Ranger has earned EPA-

estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mpg

combined for 4x2 trucks."[7]  Ford claimed that "[t]his is the best-in-class EPA-

estimated city fuel economy rating of any gasoline-powered four-wheel-drive

midsize pickup and it is an unsurpassed EPA-estimated combined fuel economy

rating."[8]

10.     As explained in detail below, this is not what Ford delivered in the

2019 Ford Ranger.  In contrast to Ford's promises, scientifically valid testing has

revealed that the vehicles (i) are not as fuel efficient as promised (ii) not what a

reasonable consumer would expect; and (iii) are not what Ford had advertised.

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

Further, the vehicles' promised power, fuel economy and efficiency, and towing capacity is obtained only by altering the testing calculations.

11.     Ford's representations are deceptive and false, and Ford sold its 2019 Ford Rangers while omitting information that would be material to a reasonable consumer, namely that Ford miscalculated factors during internal vehicle testing processes in order to report that its vehicles were more fuel efficient than they actually were, and discounting common real-world driving conditions.

12.     Plaintiff alleges that the 2019 Ford Ranger model is affected by the unlawful, unfair, deceptive, and otherwise defective fuel efficiency testing protocol utilized by Ford. In addition, Ford markets the Affected Vehicles as "fuel efficient" and "best-in-class" in fuel economy. Without manipulating its testing procedures and ignoring common road conditions, Ford could not achieve the fuel economy and range it promises.

13.     Ford did not previously disclose to Plaintiff or Class members that in real-world driving conditions, the Affected Vehicles cannot achieve high fuel economy, power, and durability.

14.     Ford never disclosed to consumers that it programs its testing procedures to ignore certain conditions that are common to drivers. Ford never disclosed that it prioritizes profits over providing accurate information to its consumers. Ford never disclosed that the fuel economy of the Affected Vehicles

- 5 -

did not deliver as stated, that the fuel economy fell below what a reasonable consumer would expect, and that the fuel economy was materially overstated as compared to what actually was the fuel economy rate in real-world driving conditions.

15.    Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of the Affected Vehicles. Plaintiff seeks damages, injunctive relief, and equitable relief for Ford's misconduct related to the design, manufacture, marketing, sale, and lease of the Affected Vehicles, as alleged in this Complaint.

## II.    JURISDICTION

16.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff and Defendants reside in different states. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

17.    This Court also has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because Plaintiff and Defendants are citizens of different states; there are more than 100 members of the Class (as defined herein); the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs;

and Class members reside across the United States. The citizenship of each party is described further below in the "Parties" section.

18.     This Court has personal jurisdiction over Ford pursuant to 18 U.S.C. § 1965(b) & (d). This Court has personal jurisdiction over Ford because it has minimum contacts with the United States, this judicial district, and this State, and it intentionally availed itself of the laws of the United States and this state by conducting a substantial amount of business throughout the state, including the design, manufacture, distribution, testing, sale, lease, and/or warranty of Ford vehicles in this State and District. At least in part because of Ford's misconduct as alleged in this lawsuit, the Affected Vehicles ended up on this state's roads and in dozens of franchise dealerships.

### III.     VENUE

19.     Venue is proper in this Court under 28 U.S.C. § 1391 because (i) Ford conducts substantial business in this District and has intentionally availed itself of the laws and markets of the United States and this District; and/or (ii) many of the acts and transactions giving rise to this action occurred in this District, including, *inter alia*, Ford's decision-making, design, promotion, marketing, distribution, and sale of the Affected Vehicles to Plaintiff in this District.  Ford has its headquarters and sells a substantial number of automobiles in this District, has dealerships located throughout this District, and the misconduct occurred, in part, in this

District. Venue is also proper under 18 U.S.C. § 1965(a) because Ford is subject to personal jurisdiction in this District, as alleged in the preceding paragraph, and Ford has agents located in this District.

## IV.   PARTIES

**A.**   Plaintiff

Tracey Travis

20.   Plaintiff Tracey Travis is a New Jersey citizen and resident of Little Falls, New Jersey located in Passaic County.  On or about March 11, 2019, he purchased a new 2019 Ford Ranger pickup paying $47,952.01.  Mr. Travis compared the alleged fuel-efficiency of the Ranger with other similar trucks and selected the Ranger truck based on Ford's representations about the vehicle's fuel-efficiency.

21.   Plaintiff purchased the new 2019 Ranger Lariat model, with VIN 1FTER4FH2KLA10885, from All American Ford located in Hackensack, New Jersey. Plaintiff purchased and still owns this vehicle.  Unbeknownst to Plaintiff at the time the vehicle was purchased, it consumes more fuel than advertised.  Upon information and belief, the vehicle is also equipped with a cheat device, a computer that misrepresents the mileage displayed on the trip meter.  Ford's unfair, unlawful, and deceptive conduct in designing, testing, manufacturing, marketing, and selling the vehicle with exaggerated fuel economy caused Plaintiff to suffer out-of-pocket loss in the form of overpayment at the time of purchase, in addition to added fuel

costs.  Ford knew about or recklessly disregarded the inaccurate fuel economy representations, computer model, physical test cheating, and the mileage cheat device included in the vehicle, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable but mistaken belief that his vehicle had better fuel economy than the competition, and would retain all of its promised fuel economy and performance throughout its useful life. Plaintiff selected and ultimately purchased his vehicle, in part, because of the stated "best in class" fuel economy.  Had Ford disclosed the true fuel economy and dubious certifications of the vehicle, Plaintiff would not have purchased the vehicle or would have paid less for it. Plaintiff and each Class member has suffered an ascertainable loss as a result of Ford's omissions and/or misrepresentations. Neither Ford nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of a fuel economy cheat device or the true fuel economy of the Affected Vehicles prior to purchase.

**B.**    Defendant

Ford Motor Company

22.    Ford Motor Company is a corporation doing business in all 50 states and the District of Columbia, and is organized under the laws of the State of Delaware, with its principal place of business in Dearborn, Michigan.

23.     At all times relevant to this action, Ford manufactured, sold, and warranted the Affected Vehicles throughout the United States. Ford and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the Affected Vehicles.  Ford also developed and disseminated the owner's manuals, supplements, and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles, and Ford provided these to its authorized dealers for the express purpose of having these dealers pass such materials to potential purchasers at the point of sale. Ford also created, designed, and disseminated information about the quality of the Affected Vehicles to various agents of various publications for the express purpose of having that information reach potential consumers.

## V.     FACTUAL ALLEGATIONS

24.     Ford deliberately miscalculated and misrepresented factors used in vehicle certification testing in order to report that its vehicles used less fuel and emitted less pollution than they actually did.  The certification test related cheating centers on the "Coast Down" testing and "Road Load" calculations.

25.     Coast Down testing measures the forces working against the vehicle by driving it up to speed, and then shifting to neutral, allowing it to coast down, being slowed by forces such as wind resistance, rolling resistance of the tires, and other forces working against the vehicle.

- 10 -

26.    Ford miscalculated "Road Load," which is a measure of those forces, defined as the force that is imparted on a vehicle while driving at a constant speed over a smooth, level surface from sources such as tire rolling resistance, driveline losses, and aerodynamic drag.[9]

27.    This measure of forces acting against the vehicle during real-world driving is critical to the simulation of actual driving when a vehicle is tested in the laboratory.  Ford's internal lab tests did not account for these forces, which lead to better—and entirely inaccurate—fuel economy projections, and claims that the vehicles emitted less pollution than they emitted in reality.

28.    Ford has admitted in September of 2018 several of its own employees were questioning its computer modeling and physical test practices for certification of fuel economy and emissions.[10]  Yet, Ford took no action to correct these ongoing misrepresentations or to alert consumers.

29.    Pressured by the pending governmental criminal investigation, Ford has now stated that it will look into the testing of the 2019 Ranger truck before looking at its other vehicles.  When Ford released a statement regarding the problem, truck blogger Andre Smirnov of TheFastLaneTruck.com drove the new Ranger for 1,000 miles, from California to Colorado to test its real-world mileage,

---

[9] *See* Exhibit 1, https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=34102&flag=1.
[10] Exhibit 2, https://www.nytimes.com/2019/02/21/business/ford-emissions.html?module=inline.

and found it achieved only 19.5 mpg, not the 24 mpg certified to the EPA for the 4x4 model.[11]

30.     Having concluded that the actual performance of the Ranger was "nowhere close" to the EPA rated mpg, in March of 2019, the truck blogger tested the Ranger truck on The Fast Lane Truck's 98-mile fuel economy loop.[12]  "[T]he Ranger's trip computer told us that the truck managed just over 25 mpg, though our math at the fuel pump did not add up to the same number."[13]  The highway mileage was only one (1) mpg greater on the test loop than on its 1,000 mile drive. The TFL test drivers were at a loss for words when they discovered a nearly four (4) mpg discrepancy between the mileage reported on the Ranger's trip meter and what they measured at the pump (21.3 mpg actual versus 25.8 mpg on Ford's trip meter)[14]:

---

[11] Exhibit 5, https://www.tfltruck.com/2019/02/real-world-2019-ford-ranger-fuel-economy-here-is-the-unexpected-result-after-a-1000-mile-road-trip-video/.

[12] Exhibit 14, https://www.tfltruck.com/2019/03/epa-says-the-new-ford-ranger-gets-24-mpg-on-the-highway-but-what-does-it-really-get-at-70-mph-video/.

[13] *Id.*

[14] Exhibit 6, Video of the testing located at https://youtu.be/W6iLtygCC7Y, embedded in the previously cited article at: https://www.tfltruck.com/2019/03/epa-says-the-new-ford-ranger-gets-24-mpg-on-the-highway-but-what-does-it-really-get-at-70-mph-video/.



EPA Says the New Ford Ranger Gets 24 MPG on the Highway, But What Does It Really Get at 70 MPH?

31.     Thus, Ford has programmed its onboard computers with a mileage cheat device to continue to lie about the vehicle's fuel economy in order to continually conceal the misrepresentation.

32.     It appears that the popular F-150 also suffers from the same failure of real-world fuel economy.  The Car and Driver review of the 2019 F-150 states:

> "The EPA numbers say they deliver, but our real-world highway fuel-economy test says otherwise.  The 375-hp V-6 with all-wheel drive achieved 19 mpg, an anticlimactic 4 mpg below its EPA rating."[15]

---

[15] Exhibit 7, https://www.caranddriver.com/ford/f-150.

33.     With respect to its 2019 Ford Ranger, Ford promised that its midsize truck "will deliver with durability, capability and fuel efficiency, while also providing in-city maneuverability and the freedom desired by many midsize pickup truck buyers to go off the grid."[16]  Ford also claimed that it's "All-New Ford Ranger Rated Most Fuel Efficient Gas-Powered Midsize Pickup in America."[17]  "With EPA-estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mph combined, 2019 Ford Ranger is the most fuel efficient gas-powered midsize pickup in America."[18]  Ford claimed the 2019 Ranger "is the no-compromise choice for power, technology, capability, and efficiency whether the path is on road or off."[19]  Ford knew that to sell the Ranger, it had to tout it as having fuel-efficiency and reduced emissions, and that such promises were material to consumers.

34.     There is no question that Ford used the fuel efficiency ratings as a sales tool to entice consumers into purchasing the 2019 Ford Ranger.  Indeed, Ford promised that "[t]he adventure-ready 2019 Ford Ranger is the most fuel-efficient gas-powered midsize pickup in America—providing a superior EPA-estimated city

---

[16] Exhibit 3, Statement from Todd Eckert, Ford Truck Group's Marketing Manager, https://thenewswheel.com/2019-ford-ranger-most-fuel-efficient/.

[17] Exhibit 4, https://media.ford.com/content/fordmedia/fna/us/en/news/2018/12/11/ford-ranger-rated-most-fuel-efficient-gas-powered-midsize-pickup.html.

[18] *Id.*

[19] *Id.*

fuel economy rating and an unsurpassed EPA-estimated combined fuel economy rating versus the competition. The all-new Ranger has earned EPA-estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mpg combined for 4x2 trucks."[20] Ford claimed that "[t]his is the best-in-class EPA-estimated city fuel economy rating of any gasoline-powered four-wheel-drive midsize pickup and it is an unsurpassed EPA-estimated combined fuel economy rating."[21]

35. By cheating in the certification testing, and providing a mileage cheat device in the vehicles, Ford made its Ranger trucks more appealing and competitive in the marketplace, to the point of being named "best in class" and driving up sales and profits.

36. Ford also reaped a double reward from this cheating. Cars and trucks are one of the major sources of air pollution, which includes ozone, particulate matter, and other smog-forming emissions. The health risks of air pollution are extremely significant—poor air quality increases respiratory ailments like asthma and bronchitis, heightens the risk of life-threatening conditions like cancer, and burdens the American health care system with substantial medical costs. Passenger cars and trucks are major contributors to pollution, producing significant amounts of nitrogen oxides, carbon monoxide, and other pollution. The U.S.

[20] *Id.*

[21] *Id.*

government, through the EPA, has passed and enforced laws designed to protect

U.S. citizens from these pollutants and certain chemicals and agents known to

cause disease in humans.

37.     The U.S. government, through the EPA, has passed and enforced laws

designed to protect United States citizens from pollution and, in particular, certain

chemicals and agents known to cause disease in humans. Automobile

manufacturers must abide by these laws and must adhere to EPA rules and

regulations.

38.     The Clean Air Act has strict emissions standards for vehicles, and it

requires vehicle manufacturers to certify to the EPA that the vehicles sold in the

United States meet applicable federal emissions standards to control air pollution.

Every vehicle sold in the United States must be covered by an EPA-issued

certificate of conformity.

39.     There is a very good reason that these laws and regulations exist: in

2012, the World Health Organization declared vehicle emissions to be

carcinogenic and about as dangerous as asbestos.

40.     Before introducing Affected Vehicles into the U.S. stream of

commerce (or causing the same), Ford is required to first apply for, and obtain, an

EPA-administered certificate of conformity (COC) certifying that the vehicle

comported with the emissions standards for pollutants enumerated in 40 C.F.R. §§

- 16 -

86.1811-04, 86.1811-09, and 86.1811-10. The Clean Air Act expressly prohibits automakers, like Ford, from introducing a new vehicle into the stream of commerce without a valid COC from the EPA. Moreover, vehicles must be accurately described in the COC application "in all material respects" to be deemed covered by a valid COC. California's emission standards are even more stringent than those of the EPA. The California Air Resources Board (CARB), the State of California's regulator, requires a similar application from automakers to obtain an Executive Order confirming compliance with California's emission regulations before allowing the vehicle onto California's roads.

41.     The United States has two sets of parallel standards that affect fuel economy: (1) the corporate average fuel economy (CAFE) standards adopted by the National Highway Traffic Safety Administration (NHTSA), an agency within the Department of Transportation (DOT); and (2) greenhouse gas (GHG) emissions standards adopted by the EPA.

42.     Automobile manufacturers must abide by these laws and must adhere to EPA rules and regulations.  One of the major drivers of fuel efficiency improvement are the Corporate Average Fuel Economy (CAFE) standards.  These requirements have nearly doubled the fuel efficiency of vehicles in the U.S.  In addition to the reduced health costs and human illness, CAFE standards are estimated to save each U.S. household approximately $2,000.00 per year in

reduced fuel consumption as of 2016.  The Energy Independence and Security Act
(EISA) of 2007 mandated a 40% increase in fuel economy by 2020.

43.     The largest emissions cheating scandals came from the diesel segment
of the industry, where the dirtiest fuels presented the greatest temptation to cheat.
The undersigned has also brought suit against Ford for its cheating on emissions in
more than 500,000 of its heavy-duty diesel trucks, and Volkswagen was caught
with its now infamous cheat devices in diesel vehicles.

44.     But under the increasing federal standards, Ford also began to market
its gasoline powered vehicles as being cleaner, with high fuel economy.  As the
Ford Ranger was out of the market for eight years, Ford took a targeted marketing
approach for the 2019 Ranger, focusing on "outdoorsy digital ads," that pitched the
truck to outdoor adventurists.[22] Ford capitalized on its fuel-efficiency as a selling
point over its competitors.[23]  Ford sought a strong re-entry of the Ranger into the
U.S. market by pitching it as amazingly fuel efficiency.

45.     Ford's representations are deceptive and false, and Ford sold its 2019
Ford Rangers while omitting information that would be material to a reasonable
consumer, namely that Ford provided inaccurate computer modeling and physical
testing for use in vehicle certification testing, and an onboard mileage cheat device,

---

[22] Exhibit 8, https://adage.com/article/cmo-strategy/ford-takes-targeted-approach-ranger-comeback/316801.

[23] Exhibit 9, https://www.caranddriver.com/news/a25470574/2019-ford-ranger-pickup-mpg/.

in order to report that its vehicles had greater fuel efficiency and emitted less pollution than they actually did.

46.     Plaintiff alleges that the 2019 Ford Ranger model is affected by the unlawful, unfair, deceptive, and otherwise defective fuel efficiency and emission testing protocol, and mileage cheat device, utilized by Ford on the "Affected Vehicles."

47.     Without manipulating its testing procedures and ignoring common road conditions, Ford could not achieve the fuel economy and range it promises.

48.     Ford did not previously disclose to Plaintiff or Class members that in real-world driving conditions, the Affected Vehicles cannot achieve the fuel economy as promised.

**A.**     Criminal Investigation

49.     Ford Motor Company's March 2019 Securities and Exchange Commission filing revealed that it is under criminal investigation by the United States Department of Justice for its emissions certification practices.[24]

50.     Ford Motor Company is a leading auto manufacturer, having sold 2.5 million vehicles in 2018.  Ford's strategy has increasingly focused on the manufacture and sale of larger gas-guzzling pickup trucks, sport utility vehicles (SUVs), and vans.  These vehicles are, of course, the most challenged by emissions

---

[24] Exhibit 10, Ford's March 31, 2019 Quarterly Report to the SEC, at page 70: https://www.sec.gov/Archives/edgar/data/37996/000003799619000026/f0331201910-q.htm.

standards and fuel efficiency.  Ford's focus on this segment of the market created an immense incentive to cheat.

51.    In September of 2018, several Ford employees expressed concerns about the testing practices at Ford pertaining to emissions and fuel-efficiency.  In February of 2019, Ford admitted it was looking into these concerns about its "computer-modeling methods and calculations used to measure fuel economy and emissions."[25]  Kim Pittel, Ford's vice president for sustainability, environment and safety engineering, has admitted to the New York Times that these "calculations [are] used in testing cars for fuel economy ratings and emissions certifications."[26]

**B.**    Mechanism of Cheating

52.    The Environmental Protection Agency (EPA) defines "Road load" as follows:

> "the force imparted on a vehicle while driving at a constant speed over a smooth level surface from sources such as tire rolling resistance, driveline losses, and aerodynamic drag."

EPA letter to manufacturers, titled: "*Determination and Use of Vehicle Road-Load Force and Dynamometer Settings*."[27]  These calculations are critical to laboratory fuel efficiency and emissions testing because the vehicle is placed on a

---

[25] Exhibit 11, https://www.nytimes.com/2019/04/26/business/ford-emissions-criminal-investigation.html.

[26] Exhibit 2, https://www.nytimes.com/2019/02/21/business/ford-emissions.html?module=inline.

[27] Exhibit 1, https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=34102&flag=1.

dynamometer, which is essentially a treadmill for cars.   When driving on a dynamometer, the vehicle is stationary and does not experience the drag of air against the vehicle; or of the resistance of the tire against the road surface; or the loss of horsepower that occurs in the drivetrain of the vehicle, the friction, heat, drag, and other various losses that occur between the engine and tires touching the road.



2017 Ford F-350 During Dynamometer Testing

53.     Auto manufacturers use "coast down" tests of vehicles on the actual roadway to help calculate variables to be utilized in conjunction with dynamometer testing.   Coast down testing provides data regarding aerodynamic drag, tire rolling resistance, and drivetrain frictional losses and provides technical data used to program the test dynamometers that generate EPA fuel economy and emissions ratings.   In a coast down test, a vehicle is brought to a high speed on a flat, straight road and then set coasting in neutral until it slows to a low speed.   By recording the

time the vehicle takes to slow down, it is possible to model the forces affecting the vehicle. Coast down tests are governed by tests developed by the Society of Automotive of Engineers (SAE). SAE developed a standard procedure (J2263-Dec 2008) to perform road load measurement using coast down testing, and a standard procedure (J1263-Mar 2010) to perform road load measurement and dynamometer simulation using coast down testing, and the current government-approved standard for road load measurement using onboard anemometry and coast down testing technique is SAE International Standard. These standards must be followed by federal regulation. The data relating to speed and distance are recorded by special instruments to account for various factors that might affect the results. The test produces data that identifies or maps the drag and other forces acting on the vehicle in the real world.

54.     A coast down requires planning, data collection, and data processing, but offers many opportunities for manipulation of the data. Data variability and error can be controlled, but several factors must be considered under SAE standards, including calculation of the mass of the vehicle, tire pressure, weather, and environmental factors (e.g., wind speed, air temperature, humidity, and barometric pressure), aerodynamic factors, and road surface, as well as experiment design and methodology, measurement errors, data acquisition systems, and vehicle qualifications. The SAE procedure on coast down testing includes an

appendix with FORTRAN code that processes experimental velocity data and produces a mathematical vehicle force model.

55.     The protocol specifies all conditions under which the engine is tested, including lab temperature and vehicle conditions. Most importantly, the test cycle defines the vehicle speed over time that is used to simulate a typical driving scenario. An example of a driving cycle is shown in Figure A. This graph represents the FTP-75 (Federal Test Procedure) cycle that has been created by the EPA and is used for emission certification and fuel economy testing of passenger vehicles in the United States. The cycle simulates an urban route with frequent stops. The cycle lasts 1,877 seconds (about 31 minutes) and covers a distance of 11.04 miles (17.77 km) at an average speed of 21.2 mph (34.12 km/h).

Figure A



56.     To assess conformance, these tests are carried out on a chassis

dynamometer, a fixture that holds a car in place while allowing its driven wheels to

turn (a treadmill for cars) with varying resistance meant to simulate the actual load

on the engine during on-road driving.  Fuel consumption and emissions are

measured during the test and compared to an emissions standard that defines the

maximum pollutant levels that can be released during such a test. In the United

States, emissions standards are managed on a national level by the EPA. In

addition, California has its own emissions standards that are defined and enforced

by CARB. California standards are also adopted by a number of other states

("Section 177" states).[28] Together with California, these states cover a significant

fraction of the U.S. market, making them a de facto second national standard.

57.     Ford's resulting certifications and representations of mileage and

emissions are misrepresentations.

**C.**     Ford's History of Ford's Cheating

58.     Ford is the granddaddy of emissions cheaters.  The recent

Volkswagen emissions cheating debacle is definitely not the first.  In 1973, Ford

and Volkswagen were caught in the EPA's first investigation into emission

cheating devices.

---

[28] Those states are: Connecticut, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, Delaware, Georgia, and North Carolina.

010825-11/1133054 V1

59.    Ford was caught again in 1998, using a cheat device in 60,000 Econoline vans, which resulted in a multi-million-dollar settlement with the EPA.[29]

60.    Ford was caught just last year, cheating on emissions certification for over 500,000 heavy-duty diesel trucks.  Ford was sued by the undersigned firm for this cheat method, and the litigation is ongoing.

61.    But Ford learned the wrong lesson from getting caught.  Ford may be shifting away from cheating the government with cheat devices, finding an easier target for its fraud.  Ford is increasingly misrepresenting the fuel efficiency of its vehicles, which is a more indirect way of cheating on emissions requirements.  Through computer modeling, Ford constructs a fuel efficiency for each vehicle that does not exist in the real world.

62.    Ford over-stated the fuel efficiency of its Ford Fusion and C-MAX hybrid vehicles and was sued for it.  As a result, "[i]n 2013 and 2014, it lowered the gas mileage ratings on several hybrid cars by one to seven miles per gallon."[30]

63.    This would prove to be the tip of the iceberg.  Ford was not only misrepresenting the fuel efficiency of these extremely fuel-efficient vehicles.  Ford had developed a way to over-state the fuel efficiency of any vehicle.

---

[29] Exhibit 12, *VW Emissions 'Defeat Device' Isn't the First*" 9/24/15 article in Autoweek: https://autoweek.com/article/car-news/vw-emissions-defeat-device-isnt-first.

[30] Exhibit 2, https://www.nytimes.com/2019/02/21/business/ford-emissions.html?module=inline.

**D.**    Scope of New Cheating

64.    Ford's computer modeling cheat method is not limited to the Ranger truck.   Ford's recent SEC filing describes the problem as a "potential concern involving its "U.S. emissions certification process."[31]   Ford states that "The first vehicle we are evaluating is the 2019 Ranger; we are assessing additional vehicles as well." [32]   At this time, the class is defined as all owners and lessors of 2019 Ford Ranger.  Because the F-150 is similarly failing to measure up to its advertised mileage, the cheating likely includes the F-150. The class is likely to be expanded, and could potentially include all Ford vehicles certified for sale in the U.S. for a number of years.

65.    Put simply, Plaintiff and all members of the proposed Class paid a premium for their fuel efficient and supposedly environmentally friendly vehicles, and were harmed by being sold vehicles that do not perform as advertised. Plaintiff and members of the Class were thus injured at the point of sale and throughout their ownership of the vehicle, as they would not have purchased or leased the

---

[31] Exhibit 10, Ford's March 31, 2019 SEC filing at p. 70:
https://www.sec.gov/Archives/edgar/data/37996/000003799619000026/f0331201910-q.htm.

[32] Exhibit 13, February 21, 2019 statement by Kim Pittel at Ford's Media Center, titled "Ford Investigating Process  for U.S. Emissions Certification Concerning Road Load."
http://www.campaign.ford.com/content/fordmedia/fna/us/en/news/2019/02/21/ford-investigating-process-for-us-emissions-certification-conc.html

010825-11/1133054 V1

vehicles (or at the very least would have paid far less for them) if Ford had truthfully disclosed their actual performance.

**E.**     Ford advertising

66.     Even after Ford employees had come forward about the cheating, Ford's media center touted the 2019 Ranger truck as having amazing performance without compromise, and the claims of its fuel efficiency are front and center:



- With EPA-estimated fuel economy ratings of 21 mpg city, 26 mpg highway and 23 mpg combined, 2019 Ford Ranger is the most fuel-efficient gas-powered midsize pickup in America

December 11, 2018 Ford Media Press Release titled, "*Adventure Further: All-New Ford Ranger Rated Most Fuel-Efficient Gas-Powered Midsize Pickup in America.*"[33]

67.     Ford's claim of most fuel efficient in its class is repeated in sales brochures for the 2019 Ranger:



---

[33] Exhibit 4, https://media.ford.com/content/fordmedia/fna/us/en/news/2018/12/11/ford-ranger-rated-most-fuel-efficient-gas-powered-midsize-pickup.html

010825-11/1133054 V1

**F.**     Economic harm

68.     As a result of Defendant's unfair, deceptive, and/or fraudulent business practices, Plaintiff did not receive the fuel efficiency that was advertised. On top of the premium he paid for this vehicle, Plaintiff and consumers will also continually be required to purchase more fuel than the vehicle was represented to require.  And Plaintiff and the proposed members of the Class will not be able to "Adventure Farther" on a tank of gas as advertised.

69.     Additionally, the use of more fuel results in the emission of more pollutants.   Owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the lower fuel economy and higher emissions at the time they purchased or leased their Affected Vehicles, or had they known of the effects on fuel economy if the emissions were not manipulated, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did and would not have paid a premium.

## VI.     TOLLING OF THE STATUTE OF LIMITATIONS

**A.**     Discovery rule tolling

70.     Class members had no way of knowing about Ford's deception with respect to the Affected Vehicles' performance in real-world driving. To be sure, Ford continues to market the Affected Vehicles, including the 2019 Ranger, with false representations of its fuel efficiency.  The Affected Vehicles also contain a

computerized mileage "cheat device" that constantly misrepresents the fuel efficiency to consumers as they drive.

71.     Within the period of any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered through the exercise of reasonable diligence that Ford was concealing the conduct complained of herein and misrepresenting the company's true position with respect to the performance of the Affected Vehicles.

72.     Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Ford did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Ford had concealed information about the true emissions of the Affected Vehicles, which was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Ford valued profits over truthful marketing and compliance with the law.

73.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Affected Vehicles.

**B.**     Fraudulent concealment tolling

74.     All applicable statutes of limitation have also been tolled by Ford's

knowing and active fraudulent concealment and denial of the facts alleged herein

throughout the period relevant to this action.

75.     Instead of disclosing its fuel economy and emissions testing scheme,

Ford continues to falsely represent that the Affected Vehicles have higher fuel

economy and lower emissions than advertised.

**C.**     Estoppel

76.     Ford was under a continuous duty to disclose to Plaintiff and the other

Class members the true character, quality, and nature of the Affected Vehicles'

fuel efficiency and emissions.

77.     Ford knowingly, affirmatively, and actively concealed or recklessly

disregarded the true nature, quality, and character of the fuel efficiency and

emissions in the Affected Vehicles, and continues to do so in its advertising and

brochures for continued sale of these vehicles.

78.     Based on the foregoing, Ford is estopped from relying on any statutes

of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

79.     Plaintiff brings this action on behalf of himself and as a class action,

pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil

Procedure, on behalf of the following class (collectively, the "Class"):

> All persons who purchased or leased a Ford vehicle whose
> EPA fuel economy ratings were less than the fuel economy
> rating produced by the applicable federal test, including,
> but not limited to, the model year 2019 Ford Ranger truck.

The class is likely to also include all F-150 trucks, and other vehicles, as well as

other model year vehicles.  Plaintiff reserves the right to amend the proposed class

after additional information is received from Ford Motor Company in discovery.

80.    Excluded from the Class are individuals who have personal injury

claims resulting from the high emissions in the Affected Vehicles. Also excluded

from the Class are Ford and its subsidiaries and affiliates; all persons who make a

timely election to be excluded from the Class; governmental entities; the Judge to

whom this case is assigned and his/her immediate family; and Plaintiff's counsel.

Plaintiff reserves the right to revise the Class definition based upon information

learned through discovery.

81.    Certification of Plaintiff's claims for class-wide treatment is

appropriate because Plaintiff can prove the elements of his claims on a class-wide

basis using the same evidence as would be used to prove those elements in

individual actions alleging the same claim.

82.    This action has been brought and may be properly maintained on

behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

83.    <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members

of the Class are so numerous and geographically dispersed that individual joinder

of all Class members is impracticable. For purposes of this complaint, Plaintiff alleges that there are in excess of an estimated 800,000 or more vehicles in the Class. The precise number of Class members is unknown to Plaintiff but may be ascertained from Ford's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

84.    <u>Commonality and Predominance</u>: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)    Whether Ford and engaged in the conduct alleged herein;

b)    Whether Ford designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)    Whether Ford provided false information to consumers regarding the fuel efficiency and emissions of the Affected Vehicles;

d)    Whether Ford provided false information to the EPA regarding the fuel efficiency and emissions of the Affected Vehicles;

e)    Whether Ford knew, and for how long, that the testing certifying the fuel efficiency and emissions of the Affected Vehicles was tainted by inaccurate information;

- 33 -

f)    Whether Ford intentionally designed, manufactured, marketed, and distributed Affected Vehicles with misleading fuel efficiency and emissions ratings;

g)    Whether Plaintiff and the other Class members overpaid for their vehicles at the point of sale; and

h)    Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

85.    <u>Typicality</u>: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Ford's wrongful conduct as described above.

86.    <u>Adequacy</u>: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Plaintiff's counsel have been pioneers in uncovering emissions misconduct, including doing so in the diesel Ford, Mercedes, General Motors, and FCA emissions cases. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

87.    <u>Superiority</u>: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action. The damages or other financial detriment suffered

by Plaintiff and the other Class members are relatively small compared to the

burden and expense that would be required to individually litigate their claims

against Ford, so it would be impracticable for the members of the Classes to

individually seek redress for Ford's wrongful conduct. Even if Class members

could afford individual litigation, the court system could not. Individualized

litigation creates a potential for inconsistent or contradictory judgments and

increases the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision

by a single court.

## COUNT 1

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
(N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)

88.    Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

89.    This claim is brought by Plaintiff on behalf of New Jersey purchasers

who are members of the Class.

90.    The New Jersey Consumer Fraud Act (New Jersey CFA) makes

unlawful "[t]he act, use or employment by any person of any unconscionable

commercial practice, deception, fraud, false pretense, false promise,

010825-11/1133054 V1

misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. STAT. ANN. § 56:8-2. Ford failed to disclose that the Affected Vehicles do not have the advertised and certified fuel efficiency, and in fact contain a mileage cheat device that continually misrepresents the mileage of the vehicle to the user. The Affected Vehicles' fuel economy are far worse than a reasonable consumer would expect given the premium paid for these vehicles over other vehicles.

91. Ford, Plaintiff, and New Jersey Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

92. Ford engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

93. Plaintiff is entitled to recover legal and/or equitable relief, including an order enjoining Ford's unlawful conduct, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19, and any other just and appropriate relief.

COUNT 2

FRAUD BY CONCEALMENT
(BASED ON NEW JERSEY LAW)

94.     Plaintiff incorporates by reference all preceding allegations as though
fully set forth herein.

95.     Plaintiff brings this claim on behalf of the New Jersey purchasers who
are members of the Class.

96.     Ford intentionally concealed the true amount and characteristics of the
fuel efficiency of the Affected Vehicles.

97.     Ford further affirmatively misrepresented to Plaintiff in advertising
and other forms of communication, including standard and uniform material
provided with each car and on its website, as well as the onboard mileage cheat
device, the true performance and mileage of the Affected Vehicles.

98.     Ford knew the truth when these representations were made.

99.     Ford had a duty to disclose the truth. Plaintiff and the other Class
members relied on Ford's material representations.

100.    The truth about the true mileage and mileage cheat device was known
only to Ford; Plaintiff and the other Class members did not know of these facts and
Ford actively concealed these facts from Plaintiff and the other Class members.

101.    Plaintiff and the other Class members reasonably relied upon Ford's
deception. They had no way of knowing that Ford's representations were false,

- 37 -

misleading, or incomplete. As consumers, Plaintiff and the other Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and the other Class members by concealing the true facts about the Affected Vehicles.

102.   Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles.

103.   Plaintiff and the other Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for these vehicles. Plaintiff's and the other Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other Class members.

104.   Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they overpaid at the time of purchase, and continue to pay more in fuel costs than advertised and certified.

105.   The value of Plaintiff's and the other Class members' vehicles has diminished as a result of Ford's fraudulent concealment.

106.   Accordingly, Ford is liable to Plaintiffs and the other Class members for damages in an amount to be proven at trial.

107.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 3

### VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1 *ET SEQ.*)

108.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

109.   This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of Alabama purchasers who are members of the Class.

110.   The Alabama Deceptive Trade Practices Act (Alabama DTPA) declares several specific actions to be unlawful, including: "engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5.

- 39 -

111.   Plaintiff and Alabama Class members are "consumers" within the meaning of ALA. CODE. § 8-19-3(2).

112.   Plaintiff, Alabama Class members, and Ford are "persons" within the meaning of ALA. CODE § 8-19-3(3).

113.   Ford was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

114.   Pursuant to ALA. CODE § 8-19-10, Plaintiff will amend to seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each plaintiff.

115.   Plaintiff also will amend to seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under ALA. CODE. § 8-19-1, *et seq.*

116.   On May 6, 2019, Plaintiff sent a letter complying with ALA. CODE § 8-19-10(e) to Ford. Should Ford fail to remedy its unlawful conduct within the requisite period, Plaintiff will amend to seek all damages and relief to which they are entitled.

COUNT 4

VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT
(ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*)

117.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

118.   This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of Alaska purchasers who are members of the Class.

119.   The Alaska Unfair Trade Practices and Consumer Protection Act (Alaska CPA) declared unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

120.   Pursuant to ALASKA STAT ANN. § 45.50.531, Plaintiff will amend his Complaint to seek monetary relief against Ford measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff.

010825-11/1133054 V1

121.   Plaintiff also will amend to seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices pursuant to ALASKA STAT. ANN. § 45.50.535(b)(1), attorneys' fees, and any other just and proper relief available under the Alaska CPA.

122.   Plaintiff sent a letter on May 6, 2019 complying with ALASKA STAT. ANN. § 45.50.535(b)(1) to Ford.

COUNT 5

VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT<br>(ARIZONA REV. STAT. § 44-1521 *ET SEQ.*)

123.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

124.   This claim is brought by Plaintiff on behalf of Arizona purchasers who are members of the Class.

125.   The Arizona Consumer Fraud Act (Arizona CFA) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A). Ford failed to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency

- 42 -

that was advertised and certified, they contain a mileage cheat device that continually lies to the consumer, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles.

126.   Ford, Plaintiff, and Arizona Class members are "persons" within the meaning of the Arizona CFA, ARIZ. REV. STAT. § 44-1521(6).

127.   Each Affected Vehicle at issue is "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

128.   Ford's conduct, as set forth above, occurred in the conduct of trade or commerce.

129.   Pursuant to the Arizona CFA, Plaintiff seeks monetary relief against Ford in an amount to be determined at trial. Plaintiff also seeks punitive damages because Ford engaged in aggravated and outrageous conduct with an evil mind.

130.   Plaintiff also seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

COUNT 6

VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
(ARK. CODE ANN. § 4-88-101 *ET SEQ.*)

131.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

010825-11/1133054 V1

132.   This claim is brought by Plaintiff on behalf of Arkansas purchasers who are members of the class.

133.   The Arkansas Deceptive Trade Practices Act (Arkansas DTPA) prohibits "[d]eceptive and unconscionable trade practices," which include but are not limited to "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." ARK. CODE. ANN. § 4-88-107(a)(10). The Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "(1) the act, use, or employment by any person of any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission." ARK CODE. ANN. § 4-88-108. Ford failed to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles.

134.   Ford, Plaintiff, and Arkansas Class members are "persons" within the meaning of ARK. CODE. ANN. § 4-88-102(5).

135.   Each Affected Vehicle at issue constitutes "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

136.   Plaintiff seeks monetary relief against Ford in an amount to be determined at trial. Plaintiff also seeks punitive damages because Ford acted

wantonly in causing Plaintiff's and Arkansas Class members' injuries, or with such a conscious indifference to the consequences that malice may be inferred.

137. Plaintiff also seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

COUNT 7

VIOLATIONS OF THE CALIFORNIA
UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

138. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

139. This claim is brought by Plaintiff on behalf of California purchasers who are members of the Class.

140. California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

141. Ford's conduct, as described herein, was and is in violation of the UCL. Ford's conduct violates the UCL in at least the following ways:

i.      By failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions;

ii.     By selling and leasing Affected Vehicles that suffer from a defective emission control system and that emit high levels of pollutants under normal driving conditions;

iii.     By knowingly and intentionally concealing from Plaintiff and the other California Class members that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles.;

iv.     By failing to disclose that fuel economy is achieved with manipulation of the computer trip meter;

v.     By marketing the Affected Vehicles as fuel efficient vehicles; and

vi.     By violating other California laws, including California consumer protection laws.

142.   Ford intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Class.

143.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other California Class members were deceived by Ford's failure to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency

- 46 -

that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles.

144. Plaintiff and California Class members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and California Class members did not, and could not, unravel Ford's deception on their own.

145. Ford knew or should have known that its conduct violated the UCL.

146. Ford owed Plaintiff and the Class a duty to disclose the truth about its fuel efficiency manipulation because Ford:

      i. Possessed exclusive knowledge that it manipulated the certification testing and onboard display of mileage;

      ii. Intentionally concealed the foregoing from Plaintiff and the Class; and/or

      iii. Made incomplete representations that it manipulated the certification testing and onboard display of mileage in the Affected Vehicles to misrepresent the fuel economy, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

147. Ford had a duty to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and

certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles.

148.   Ford's conduct proximately caused injuries to Plaintiff and the other California Class members.

149.   Plaintiff and the other California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Ford's conduct in that Plaintiff and the other California Class members overpaid for the Affected Vehicles, and/or the Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

150.   Ford's violations present a continuing risk to Plaintiff as well as to the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

151.   Ford's misrepresentations and omissions alleged herein caused Plaintiff and the other California Class members to make their purchases or leases of the Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other California Class members would not have purchased or leased these vehicles, would not have purchased or leased the Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative

vehicles that did not contain the mileage cheat device and reduced fuel economy of the Affected Vehicles.

152.   Accordingly, Plaintiff and the other California Class members have suffered injury in fact, including lost money or property, as a result of Ford's misrepresentations and omissions.

153.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief as may be appropriate.

COUNT 8

VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)

154.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

155.   This claim is brought by Plaintiff on behalf of California purchasers who are members of the Class.

156.   CAL. BUS. & PROF. CODE § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before

- 49 -

the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Ford failed to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles.

157.　Ford caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Ford, to be untrue and misleading to consumers, including Plaintiff and the other California Class members.

158.　Ford has violated § 17500 because the misrepresentations and omissions regarding the functionality and fuel efficiency of the Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

159.　Plaintiff and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of Ford's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Affected

Vehicles, Plaintiff and the other California Class members relied on the misrepresentations and/or omissions of Ford with respect to the functionality and fuel economy of the Affected Vehicles.  Had Plaintiff and the other California Class members known this, they would not have purchased or leased the Affected Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other California Class members overpaid for the Affected Vehicles.

160.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business. Ford's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

161.   The facts concealed and omitted by Ford to Plaintiff and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price. Had Plaintiff and the other California Class members known of the lower fuel economy or onboard mileage cheat device at the time they purchased or leased the Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

010825-11/1133054 V1

162.   Plaintiff has provided Ford with notice of its violations of the CLRA pursuant to CAL. CIV. CODE § 1782(a). The notice was transmitted to Ford on May 6, 2019.

163.   Plaintiff's and the other California Class members' injuries were proximately caused by Ford's fraudulent and deceptive business practices.

164.   Therefore, Plaintiff and the other California Class members are entitled to equitable and monetary relief under the CLRA.

165.   Plaintiff, individually and on behalf of the other California Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and the other California Class members any money Ford acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief as may be appropriate.

## COUNT 9

### BREACH OF CONTRACT
### (BASED ON CALIFORNIA LAW)

166.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

167.   This claim is brought by Plaintiff on behalf of California purchasers who are members of the Class.

168.   Ford's misrepresentations and omissions alleged herein, including Ford's failure to disclose the existence of the Affected Vehicles' onboard fuel

efficiency cheat device and lower fuel economy than advertised and certified,

caused Plaintiff and the other California Class members to make their purchases or

leases of the Affected Vehicles. Absent those misrepresentations and omissions,

Plaintiff and the other California Class members would not have purchased or

leased the Affected Vehicles, would not have purchased or leased the Affected

Vehicles at the prices they paid, and/or would have purchased or leased less

expensive alternative vehicles that did not contain the reduced mileage or fuel

efficiency cheat device. Accordingly, Plaintiff and the other California Class

members overpaid for the Affected Vehicles and did not receive the benefit of their

bargain.

169.   Each and every sale or lease of an Affected Vehicle constitutes a

contract between Ford and the purchaser or lessee. Ford breached these contracts

by selling or leasing to Plaintiff and the other California Class members defective

Affected Vehicles and by misrepresenting or failing to disclose that the Affected

Vehicles contained a cheat device, they do not provide the fuel efficiency that was

advertised and certified, and their mileage is far worse than a reasonable consumer

would expect given the premium paid for these vehicles..

170.   As a direct and proximate result of Ford's breach of contract, Plaintiff

and the Class have been damaged in an amount to be proven at trial, which shall

- 53 -

include, but is not limited to, all compensatory damages, incidental and

consequential damages, and other damages allowed by law.

COUNT 10

FRAUDULENT CONCEALMENT
(BASED ON CALIFORNIA LAW)

171.   Plaintiff incorporates by reference all paragraphs as though fully set

forth herein.

172.   This claim is brought by Plaintiff on behalf of California purchasers

who are members of the Class.

173.   Ford intentionally concealed the fact that the Affected Vehicles

contained a cheat device, they do not provide the fuel efficiency that was

advertised and certified, and their mileage is far worse than a reasonable consumer

would expect given the premium paid for these vehicles, and Ford acted with

reckless disregard for the truth and denied Plaintiff and the other California Class

members information that is highly relevant to their purchasing decision.

174.   Ford further affirmatively misrepresented to Plaintiff in advertising

and other forms of communication, including standard and uniform material

provided with each car that the Affected Vehicles it was selling had no significant

defects, had the advertised and certified fuel efficiency, and did reveal the

existence of a mileage cheat device.

175.   Ford knew these representations were false when made.

176.   The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, with reduced fuel efficiency and a fuel efficiency cheat device.

177.   Ford had a duty to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles, because Plaintiff and the other California Class members relied on Ford's material representations or omissions of fact that the Affected Vehicles they were purchasing were fuel efficient and free from defects.

178.   As alleged in this Complaint, at all relevant times, Ford has held out the Affected Vehicles to be fuel efficient. Ford disclosed certain details about the Affected Vehicles, but nonetheless, Ford intentionally failed to disclose the important facts concerning the lack of fuel efficiency and existence of a fuel efficiency cheat device, making other disclosures about the fuel efficiency deceptive.

179.   The truth about the lack of fuel efficiency and Ford's manipulations of certifications and inclusion of a fuel efficiency defeat device was known only to Ford; Plaintiff and the California Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and California Class members.

180.   Plaintiff and California Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false and/or misleading. As consumers, Plaintiff and California Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and California Class members by concealing the true facts about the Affected Vehicles' lack of fuel efficiency.

181.   Ford also concealed and suppressed material facts concerning what is evidently the true culture of Ford—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and California Class members placed in its representations.

182.   Ford's false representations were material to consumers, because they concerned the fuel efficiency of the Affected Vehicles, and also because the representations played a significant role in the value of the vehicles. As Ford well knew, its customers, including Plaintiff and California Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, and they paid accordingly.

183.   Ford had a duty to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and

certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles, because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or California Class members. Ford also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to fuel efficiency, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual mileage of its vehicles.   Having volunteered to provide information to Plaintiff and California Class members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and California Class members. Whether an automobile is fuel efficient and whether it accurately measures its own gasoline consumption are material concerns to a consumer. Ford represented to Plaintiff and California Class members that they were purchasing or leasing fuel efficient vehicles, when in fact the Affected Vehicles do not perform as advertised and certified and do not accurately report their own fuel consumption.

184.   Ford actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles were not fuel efficient or low emissions, which perception would hurt the brand's image and cost Ford money, and it did so at the expense of Plaintiff and California Class members.

185.   Ford has still not made full and adequate disclosures, and continues to defraud Plaintiff and California Class members by concealing material information regarding the fuel efficiency of its Affected Vehicles.

186.   Plaintiff and California Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly fuel efficient vehicles manufactured by Ford, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and California Class members' actions were justified. Ford was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or California Class members.

187.   Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damage because they own vehicles that are diminished in value as a result of Ford's concealment of the true fuel consumption of the Affected Vehicles and Ford's failure to timely disclose this defect or the cheat device, and the serious issues engendered by Ford's corporate policies. Had Plaintiff and California Class members been aware of the true fuel consumption

facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased Affected Vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

188. The value of Plaintiff's and California Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the true fuel economy of the Affected Vehicles and their use of a mileage cheat device, all of which has greatly tarnished the Ford brand name attached to Plaintiff's and California Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

189. Accordingly, Ford is liable to Plaintiff and California Class members for damages in an amount to be proven at trial.

190. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and California Class members' rights and the representations that Ford made to them in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

010825-11/1133054 V1

COUNT 11

VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE
PRACTICES ACT
(FLA. STAT. § 501.201 *ET SEQ.*)

191.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

192.   Plaintiff brings this Count on behalf of the Florida Subclass.

193.   Plaintiff and the Subclass are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act (Florida UDTPA), FLA. STAT. § 501.203(7).

194.   Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

195.   Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.204(1).  Defendants participated in unfair and deceptive trade practices that violated the Florida UDTPA as described herein.  Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1).  Defendant's conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is likely to mislead consumers.

- 60 -

196.    Accordingly, the Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

197.    Plaintiff and Subclass members reasonably relied upon the Defendant's false misrepresentations.  They had no way of knowing that the Defendant's representations were false and gravely misleading.  As alleged herein, the Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel the Defendant's deception on their own.

198.    The Defendant's actions as set forth above occurred in the conduct of trade or commerce.

199.   The Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

200.   The Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Subclass.

201.   The Defendant knew or should have known that their conduct violated the Florida UDTPA.

202.   The Defendant owed Plaintiff and the Subclass a duty to disclose the truth about their emissions systems manipulation because the Defendant:

      a.    Possessed exclusive knowledge that they manipulated the fuel mileage tests;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.    Made incomplete representations that they manipulated the fuel mileage tests in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

203.   The Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

204.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of the Defendant's misrepresentations and omissions.

205.   The Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  The Defendant's unlawful acts and practices complained of herein affect the public interest.

206.   Accordingly, the Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

COUNT 12

VIOLATION OF THE GEORGIA FAIR
BUSINESS PRACTICES ACT
(GA. CODE ANN. § 10-1-390 *ET SEQ.*)

207.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

208.   This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of Georgia purchasers who are members of the Class.

209.   The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and

consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 101-393(b), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised and certified." GA. CODE. ANN. § 10-1-393(b).

210.   Plaintiff and Georgia Class members are "consumers" within the meaning of GA. CODE. ANN. § 10-1-393(b).

211.   Ford engaged in "trade or commerce" within the meaning of GA. CODE. ANN. § 10-1-393(b).

212.   Once the statutory notice period has expired, Plaintiff will amend to seek damages and exemplary damages (for intentional violations) per GA. CODE. ANN. § 10-1-399(a).

213.   Plaintiff will also amend to seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per GA. CODE. ANN. § 10-1-399.

214.   On May 6, 2019, Plaintiff sent a letter complying with GA. CODE ANN. § 10-1-399(b) to Ford.

COUNT 13

VIOLATION OF THE GEORGIA UNIFORM
DECEPTIVE TRADE PRACTICES ACT
(GA. CODE. ANN § 10-1-370 *ET SEQ.*)

215.   Plaintiff hereby incorporates by reference the allegations contained in
the preceding paragraphs of this complaint.

216.   This claim is brought by Plaintiff on behalf of Georgia purchasers
who are members of the Class.

217.   Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA)
prohibits "deceptive trade practices," which include "representing that goods or
services have sponsorship, approval, characteristics, ingredients, uses, benefits, or
quantities that they do not have"; "[r]epresenting that goods or services are of a
particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising
goods or services with intent not to sell them as advertised and certified." GA.
CODE ANN. § 10-1-393(b).

218.   Ford, Plaintiff, and Georgia Class members are "persons" within the
meaning of GA. CODE ANN. § 10-1-371(5).

219.   The Plaintiff seeks an order enjoining Ford's unfair, unlawful, and/or
deceptive practices, attorneys' fees, and any other just and proper relief available
under GA. CODE ANN. § 10-1-373.

## COUNT 14

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
#### (815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A)

220.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

221.   This claim is brought on behalf of the Illinois Class members.

222.   Ford is a "person" as that term is defined in 815 ILCS 505/1(c).

223.   Plaintiff and the Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

224.   The Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois CFA) prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

225.   In the course of Ford's business, it willfully failed to disclose and actively concealed that the Affected Vehicles have much lower fuel economy than represented or than a reasonable consumer would expect in light of Ford's advertising campaign, and that the Affected Vehicles contain a fuel efficiency

- 66 -

cheat device. Accordingly, Ford engaged in unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of trade or commerce as prohibited by the Illinois CFA.

226.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Illinois Class members were deceived by Ford's failure to disclose the actual fuel economy or presence of a cheat device in the Affected Vehicles.

227.   Plaintiff and Illinois Class members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Illinois Class members did not, and could not, unravel Ford's deception on their own.

228.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

229.   Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

230.   Ford intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Class.

- 67 -

231.   Ford knew or should have known that its conduct violated the Illinois CFA.

232.   Ford owed Plaintiff and the Class a duty to disclose the truth about its fuel certification manipulation because Ford:

      a.    Possessed exclusive knowledge that it manipulated the testing, certification, and onboard vehicle reporting of fuel efficiency;

      b.    Intentionally concealed the foregoing from Plaintiff and the Class; and/or

      c.    Made incomplete representations that it manipulated the certification testing and failed to disclose the true fuel economy or presence of a fuel efficiency cheat device in the Affected Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

233.   Ford had a duty to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles, because Plaintiff and the other Illinois Class members relied on Ford's material representations that the Affected Vehicles they were purchasing were fuel efficient, and free from defects.

234.   Ford's conduct proximately caused injuries to Plaintiff and the other Illinois Class members.

235.   Plaintiff and the other Illinois Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Ford's conduct in that Plaintiff and the other Illinois Class members

overpaid for the Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

236.   Ford's violations present a continuing risk to Plaintiff as well as to the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

237.   Pursuant to 815 ILCS 505/10a(a), Plaintiff and the Illinois Class members seek monetary relief against Ford in the amount of actual damages, as well as punitive damages because Ford acted with fraud and/or malice and/or was grossly negligent.

238.   Plaintiff also seeks punitive damages, attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1, *et seq*. A copy of this Complaint has been mailed to the Attorney General of the State of Illinois in accordance with 815 ILCS 505/10a(d).

COUNT 15

BREACH OF CONTRACT
(BASED ON ILLINOIS LAW)

239.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

240.   Plaintiff brings this Count on behalf of the Illinois Class.

241.   Ford's misrepresentations and omissions alleged herein, including Ford's failure to disclose lower fuel economy and the existence of the mileage cheat device, caused Plaintiff and the other Illinois Class members to make their purchases or leases of the Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Illinois Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased the Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles.  Accordingly, Plaintiff and the other Illinois Class members overpaid for the Affected Vehicles and did not receive the benefit of their bargain.

242.   Each and every sale or lease of an Affected Vehicle constitutes a contract between Ford and the purchaser or lessee. Ford breached these contracts by selling or leasing to Plaintiff and the other Illinois Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the Affected Vehicles were lower mileage than advertised and certified and contained a mileage cheat device.

243.   As a direct and proximate result of Ford's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

COUNT 16

FRAUDULENT CONCEALMENT
(BASED ON ILLINOIS LAW)

244.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

245.   This claim is brought on behalf of the Illinois Class.

246.   Ford intentionally concealed that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles, or Ford acted with reckless disregard for the truth, and denied Plaintiff and the other Illinois Class members information that is highly relevant to their purchasing decision.

247.   Ford further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car that the Affected Vehicles it was selling had no significant defects, were fuel efficient, and would perform and operate properly when driven in normal usage.

248.   Ford knew these representations were false when made.

249.   The Affected Vehicles purchased or leased by Plaintiff and the other Illinois Class members were, in fact, defective, lower in fuel efficiency and

consume gasoline at a much higher rate than a reasonable consumer would expect in light of Ford's advertising campaign.

250.   Ford had a duty to disclose that the Affected Vehicles contained a cheat device, they do not provide the fuel efficiency that was advertised and certified, and their mileage is far worse than a reasonable consumer would expect given the premium paid for these vehicles, because Plaintiff and the other Illinois Class members relied on Ford's material representations that the Affected Vehicles they were purchasing were fuel efficient, and free from defects.

251.   As alleged in this Complaint, at all relevant times, Ford has held out the Affected Vehicles to be fuel efficient, but nonetheless, Ford intentionally failed to disclose the important facts that the Affected vehicles were not as fuel efficient as advertised and certified and contained a mileage cheat device, consuming more fuel than expected by a reasonable consumer, and making other disclosures about the emission system deceptive.

252.   The truth about the mileage cheating was known only to Ford; Plaintiff and the Illinois Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and Illinois Class members.

253.   Plaintiff and Illinois Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false and/or misleading. As consumers, Plaintiff and Illinois Class members did not, and

could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and Illinois Class members by concealing the true facts about the fuel efficiency of the Affected Vehicle.

254.   Ford also concealed and suppressed material facts concerning what is evidently the true culture of Ford—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and fuel efficiency regulations that are meant to protect the public and consumers, and save consumers money through increased fuel economy. It also emphasized profits and sales above the trust that Plaintiff and Illinois Class members placed in its representations. Fuel economy weighs heavily in consumer decisions on which vehicle to purchase.

255.   Ford's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned fuel efficiency, and also because these representations played a significant role in the value of the vehicles. As Ford well knew, its customers, including Plaintiff and Illinois Class members, highly valued the fuel efficiency of the vehicles they were purchasing or leasing, and they paid accordingly.

256.   Ford had a duty to disclose the true fuel efficiency of the Affected Vehicles, and the presence of mileage cheat devices, because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive

knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or Illinois Class members. Ford also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to mileage, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual mileage and presence of a mileage cheat device in its vehicles. Having volunteered to provide information to Plaintiff and Illinois Class members, Ford had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Illinois Class members.

257. Ford has still not made full and adequate disclosures, and continues to defraud Plaintiff and Illinois Class members by concealing material information regarding the fuel efficiency of the Affected Vehicles, including the continual misrepresentations of mileage made by the onboard mileage cheat devices.

258. Plaintiff and Illinois Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly fuel efficient vehicles manufactured by Ford, or would have taken other affirmative steps in light of the information concealed from them.

Plaintiff's and Illinois Class members' actions were justified. Ford was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Illinois Class members.

259.   Because of the concealment and/or suppression of the facts, Plaintiff and Illinois Class members have sustained damage because they own vehicles that are diminished in value as a result of Ford's concealment of the true fuel efficiency and the presence of a mileage cheat device.  Had Plaintiff and Illinois Class members been aware of the true fuel efficiency, Plaintiff and Illinois Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all, and would have avoided the continued increased fuel costs.

260.   The value of Plaintiff's and Illinois Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective and true fuel efficiency of the Affected Vehicles, all of which has greatly tarnished the Ford brand name attached to Plaintiff's and Illinois Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

261.   Accordingly, Ford is liable to Plaintiff and Illinois Class members for damages in an amount to be proven at trial.

262.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Illinois Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 17

### VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)
### (MASS. GEN. LAWS CH. 93A, § 1 *ET SEQ.*)

263.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

264.   On May 6, 2019, Plaintiff sent a letter complying with MASS. GEN. LAWS CH. 93A, § 9(3) to Ford.

## COUNT 18

### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. GEN. BUS. LAW §§ 349–350)

265.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

266.   This claim is brought by Plaintiff on behalf of New York purchasers who are members of the Class.

267. The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 349.

268. Plaintiff and New York Class members are "persons" within the meaning of N.Y. GEN. BUS. LAW § 349(h).

269. Ford is a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349.

270. Ford's deceptive acts and practices, which were intended to mislead consumers who purchased or leased an Affected Vehicle, was conduct directed at consumers.

271. Because Ford's willful and knowing conduct caused injury to Plaintiff, Plaintiff seeks recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Ford's deceptive conduct; and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

## COUNT 19

### VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15, § 751 *ET SEQ.*)

272. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

273.   This claim is brought by Plaintiff on behalf of Oklahoma purchasers who are members of the Class.

274.   The Oklahoma Consumer Protection Act (Oklahoma CPA) declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: making a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person" and "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. TIT. 15, §§ 752–753.

275.   Plaintiff and Oklahoma Class members are "persons" under OKLA. STAT. TIT. 15, § 752.

276.   Ford is a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15, § 15-751(1).

277.   The sale or lease of an Affected Vehicle to Plaintiff was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15, § 752 and Ford's actions as set forth herein occurred in the conduct of trade or commerce.

278.   Ford's acts were made knowingly, intentionally, and with malice. Ford demonstrated a complete lack of care and were in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class

members are therefore entitled to an award of punitive damages to the extent permitted under applicable law.

279.   Ford's conduct as alleged herein was unconscionable because (1) Ford, knowingly or had reason to know, took advantage of consumers reasonably unable to protect their interests because of their ignorance of Ford's fraudulent omissions and representations; (2) at the time the consumer transaction was entered into, Ford knew or had reason to know that the price the consumers were charged grossly exceeded the price at which they would have paid if they had known of the Ford's scheme, and (3) Ford knew or had reason to know that the transaction it induced the consumers to enter into was excessively one-sided in favor of Ford.

280.   Because Ford's unconscionable conduct caused injury to Plaintiff, Plaintiff seeks recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under OKLA. STAT. TIT. 15, § 761.1. Plaintiff further seeks an order enjoining Ford's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

COUNT 20
VIOLATION OF THE PENNSYLVANIA
UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(73 PA. CONS. STAT. § 201-1 *ET SEQ.*)

281.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

- 79 -

282.    This claim is brought by Plaintiff on behalf of Pennsylvania purchasers who are members of the Class.

283.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised and certified; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4).

284.    Ford, Plaintiff, and Pennsylvania Class members are "persons" within the meaning of 73 PA. CONS. STAT. § 201-2(2).

285.    Plaintiff purchased or leased Affected Vehicles primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. § 201-9.2.

286.    All of the acts complained of herein were perpetrated by Ford in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

287.    Ford is liable to Plaintiff for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 PA. CONS. STAT. § 201-9.2(a). Plaintiff is also entitled to an award of punitive damages given that Ford's

- 80 -

conduct was malicious, wanton, willful, oppressive, or exhibited a reckless

indifference to the rights of others.

COUNT 21

VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE<br>PRACTICES ACT<br>(S.C. CODE ANN. § 39-5-10 <em>ET SEQ.</em>)

288.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

289.   This claim is brought by Plaintiff on behalf of South Carolina

purchasers who are members of the Class.

290.   The South Carolina Unfair Trade Practices Act (South Carolina

UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade

or commerce." S.C. CODE ANN. § 39-5-20(a).

291.   Ford is a "person" under S.C. CODE ANN. § 39-5-10.

292.   Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiff seeks monetary

relief to recover their economic losses. Because Ford's actions were willful and

knowing, Plaintiff's damages should be trebled.

293.   Plaintiff further alleges that Ford's malicious and deliberate conduct

warrants an assessment of punitive damages because it carried out despicable

conduct with willful and conscious disregard of the rights of others. Ford's

unlawful conduct constitutes malice, oppression, and fraud warranting punitive

damages.

- 81 -

294.    Plaintiff further seeks an order enjoining each Ford's unfair or deceptive acts or practices.

COUNT 22

VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
PRACTICES AND CONSUMER PROTECTION ACT
(TEX. BUS. & COM. CODE § 17.4 *ET SEQ.*)

295.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

296.    This claim is brought by Plaintiff on behalf of Texas purchasers who are members of the Class.

297.    Plaintiff and the Texas Class members are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). *See* Tex. Bus. & Com. Code § 17.41.

298.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading, or deceptive act or practice specifically enumerated in Tex. Bus. & Com. Code § 17.46(b); or (ii) "an unconscionable action or course of action by any person." Tex. Bus. & Com. Code § 17.50(a)(2) & (3). The Texas DTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a

- 82 -

particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertising goods or services with intent not to sell them as advertised." An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). As detailed herein, Ford has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class.

299.   In the course of business, Ford willfully failed to disclose and actively concealed the conduct discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Ford also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, the use of a mileage cheat device, and/or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Affected Vehicles.

300.   Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Texas Class members, about the true performance of the Affected Vehicles, the lower fuel economy, the shorter range of the vehicle due to its lower fuel economy, and the

increased environmental impact of Ford vehicles, and the true value of the Affected Vehicles.

301.   Ford intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Texas Class.

302.   Ford knew or should have known that their conduct violated the Texas DTPA.

303.   Ford owed Plaintiff and Texas Class members a duty to disclose the performance, fuel mileage, and true environmental impact of the Affected Vehicles, because Ford:

> a.    Possessed exclusive knowledge that they were selling and distributing Affected Vehicles throughout the United States that did not perform as advertised and contained a mileage cheat device;
>
> b.    Intentionally concealed the foregoing from Plaintiff and the Texas Class; and/or
>
> c.    Made incomplete representations about the environmental friendliness, fuel mileage, towing capacity, and performance of the Affected

Vehicles while purposefully withholding material
facts from Plaintiff and the Texas Class that
contradicted these representations.

304.   Because Ford fraudulently concealed the lower mileage of the
Affected Vehicles, the value of the Affected Vehicles has greatly diminished. In
light of the stigma attached to the Affected Vehicles by Ford's conduct, they are
now worth significantly less than they otherwise would be.

305.   Ford's omissions and/or misrepresentations about the fuel
consumption of the Affected Vehicles were material to Plaintiff and the Texas
Class.

306.   Plaintiff and the Texas Class suffered ascertainable loss caused by
Ford's misrepresentations and their concealment of and failure to disclose material
information. Class members who purchased the Affected Vehicles either would
have paid less for their vehicles or would not have purchased or leased them at all
but for Ford's violations of the Texas DTPA.

307.   Ford had an ongoing duty to all Ford customers to refrain from unfair
and deceptive practices under the Texas DTPA. All owners of Affected Vehicles
suffered ascertainable loss in the form of the diminished value of their vehicle as a
result of Ford's deceptive and unfair acts and practices made in the course of
Ford's business.

010825-11/1133054 V1

308.   Ford's violations present a continuing risk to Plaintiff as well as to the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

309.   As a direct and proximate result of Ford's violations of the Texas DTPA, Plaintiff and the Texas Class have suffered injury-in-fact and/or actual damage.

310.   On May 6, 2019, Plaintiff sent a letter complying with Tex. Bus. & Com. Code Ann. § 17.505 to Ford.

311.   Plaintiff seeks monetary relief against Ford measured as actual damages in an amount to be determined at trial, treble damages for Ford's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

312.   Alternatively, or additionally, pursuant to Tex. Bus. & Com. Code § 17.50(b)(3) & (4), Plaintiff are also entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

## COUNT 23

## VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT
### (UTAH CODE ANN. § 13-11-1 *ET SEQ.*)

313.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

314.   This claim is brought by Plaintiff on behalf of Utah purchasers who are members of the Class.

315.   The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including but not limited to indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; and "indicat[ing] that a specific price advantage exists, if it does not." UTAH CODE ANN. § 13-11-4.

316.   Ford knew, or had reason to know, that consumers would rely on their failure to disclose the defects in its emissions system. Ford therefore engaged in an unconscionable act within the meaning of UTAH CODE ANN. § 13-11-5.

317.   Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff;

reasonable attorneys' fees; and any other just and proper relief available under the Utah CSPA.

COUNT 24

VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT<br>AND PROTECTION ACT<br>(W. VA. CODE § 46A-1-101 <em>ET SEQ.</em>)

318.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

319.   This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of West Virginia purchasers who are members of the Class.

320.   Ford is a "person" under W. VA. CODE § 46A-1-102(31).

321.   Plaintiff and West Virginia Class members are "consumers" as defined by W. VA. CODE §§ 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Affected Vehicles.

322.   Ford engaged in trade or commerce as defined by W. VA. CODE § 46A-6-102(6).

323.   The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. VA. CODE § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

> (I) Advertising goods or services with intent not to sell them as advertised and certified; . . .

(L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

(M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; [and]

(N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised and certified, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive.

W. VA. CODE § 46A-6-102(7).

324.   Pursuant to W. VA. CODE § 46A-6-106, once the statutory notice period has expired, Plaintiff will amend to seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each Plaintiff.

325.   Plaintiff will also amend to seek punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiff to cruel and unjust hardship as a result.

326.   Plaintiff further seeks an order enjoining Ford's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees

under W. VA. CODE § 46A-5-101, *et seq.*, and any other just and proper relief

available under the West Virginia CCPA.

327.   On May 6, 2019, Plaintiff sent a letter complying with W. VA. CODE

§ 46A-6-106(b) to Ford. This claim is included here for notice purposes only. Once

the statutory notice period has expired, Plaintiff will amend his complaint to bring

this claim on behalf of West Virginia purchasers who are members of the Class.

**A.**   Claims brought on behalf of the other state classes

COUNT 25

VIOLATION OF THE COLORADO
CONSUMER PROTECTION ACT
(COLO. REV. STAT. § 6-1-101 *ET SEQ.*)

328.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

329.   This claim is brought by Plaintiff on behalf of Colorado purchasers

who are members of the Class.

330.   The Colorado Consumer Protection Act (Colorado CPA) prohibits

deceptive practices in the course of a person's business, including but not limited

to "fail[ing] to disclose material information concerning goods, services, or

property which information was known at the time of an advertisement or sale if

such failure to disclose such information was intended to induce the consumer to

enter into a transaction." COLO. REV. STAT. § 6-1-105.

331.   Ford is a "person" under COLO. REV. STAT. § 6-1-102(6).

332.    Plaintiff and Colorado Class members are "consumers" for purposes of COL. REV. STAT § 6-1-113(1)(a).

333.    Ford's conduct, as set forth above, occurred in the conduct of trade or commerce.

334.    Pursuant to COLO. REV. STAT. § 6-1-113, Plaintiff seeks monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each plaintiff or class member.

335.    Plaintiff also seeks an order enjoining Ford's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

COUNT 26

VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
(CONN. GEN. STAT. § 42-110A *ET SEQ.*)

336.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

337.    This claim is brought by Plaintiff on behalf of Connecticut purchasers who are members of the Class.

338.    The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

339.   Plaintiff, Connecticut Class members, and Ford are each a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

340.   Ford's challenged conduct occurred in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

341.   Plaintiff and Connecticut Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

342.   Ford acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights, and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights of others. Therefore, punitive damages are warranted.

## COUNT 27
### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
(DEL. CODE TIT. 6, § 2513 *ET SEQ.*)

343.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

344.   This claim is brought by Plaintiff on behalf of Delaware purchasers who are members of the Class.

345.   The Delaware Consumer Fraud Act (Delaware CFA) prohibits the
"act, use, or employment by any person of any deception, fraud, false pretense,
false promise, misrepresentation, or the concealment, suppression, or omission of
any material fact with intent that others rely upon such concealment, suppression,
or omission, in connection with the sale, lease or advertisement of any
merchandise, whether or nor any person has in fact been misled, deceived, or
damaged thereby." DEL. CODE TIT. 6, § 2513(a).

346.   Ford is a "person" within the meaning of DEL. CODE TIT. 6, § 2511(7).

347.   Ford's actions, as set forth above, occurred in the conduct of trade or
commerce.

348.   Plaintiff seeks damages under the Delaware CFA for injury resulting
from the direct and natural consequences of Ford's unlawful conduct. *See, e.g.*,
*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1980). Plaintiff also
seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices,
declaratory relief, attorneys' fees, and any other just and proper relief available
under the Delaware CFA.

349.   Ford engaged in gross, oppressive, or aggravated conduct justifying
the imposition of punitive damages.

010825-11/1133054 V1

COUNT 28

VIOLATION OF THE HAWAII ACT § 480-2(A)
(HAW. REV. STAT. § 480 *ET SEQ.*)

350.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

351.    This claim is brought by Plaintiff on behalf of Hawaii purchasers who are members of the Class.

352.    HAWAII REV. STAT. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

353.    Ford is a "person" under HAW. REV. STAT. § 480-1.

354.    Plaintiffs and Hawaii Class members are "consumer[s]" as defined by HAW. REV. STAT. § 480-1, who purchased or leased the Affected Vehicles at issue.

355.    Pursuant to HAW. REV. STAT. § 480-13, Plaintiff seeks monetary relief against Ford measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

356.    Under HAW. REV. STAT. § 480-13.5, Plaintiff seeks an additional award against Ford of up to $10,000 for each violation directed at a Hawaii elder. Ford knew or should have known that its conduct was directed to one or more Plaintiffs who are elders. Ford's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or

- 94 -

family care and maintenance, or assets essential to the health or welfare of the

elder. Plaintiffs who are elders are substantially more vulnerable to Ford's conduct

because of age, poor health or infirmity, impaired understanding, restricted

mobility, or disability, and each of them suffered a substantial physical, emotional,

or economic damage resulting from Ford's conduct.

COUNT 29

VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CODE ANN. § 48-601 *ET SEQ.*)

357.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

358.   This claim is brought by Plaintiff on behalf of Idaho purchasers who

are members of the Class.

359.   The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive

business practices, including but not limited to (1) representing that the Affected

Vehicles have characteristics, uses, and benefits which they do not have;

(2) representing that the Affected Vehicles are of a particular standard, quality, and

grade when they are not; (3) advertising the Affected Vehicles with the intent not

to sell them as advertised and certified; (4) engaging in acts or practices which are

otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any

unconscionable method, act or practice in the conduct of trade or commerce. *See*

IDAHO CODE ANN. § 48-603.

- 95 -

360.   Ford is a "person" under IDAHO CODE ANN. § 48-602(1).

361.   Ford's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under IDAHO CODE ANN. § 48-602(2).

362.   Pursuant to IDAHO CODE ANN. § 48-608, Plaintiff seeks monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each plaintiff.

363.   Plaintiff also seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

364.   Plaintiff also seeks punitive damages against Ford because its conduct evidences an extreme deviation from reasonable standards. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

COUNT 30
VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT
(IND. CODE § 24-5-0.5-3)

365.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

366.   This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of Indiana purchasers who are members of the Class.

- 96 -

367.   Indiana's Deceptive Consumer Sales Act (Indiana DCSA) prohibits a person from engaging in a "deceptive business practice[s]" or acts, including but not limited to "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

368.   Ford is a "person" within the meaning of IND. CODE § 25-5-0.5-2(a)(2) and a "supplier" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

369.   Plaintiff's vehicle purchases are "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

370.   Pursuant to IND. CODE § 24-5-0.5-4, once the statutory notice period has expired, Plaintiff will seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up to $1,000 for Ford's willfully deceptive acts.

371.   Plaintiff will also amend to seek punitive damages based on the outrageousness and recklessness of Ford's conduct.

372.   On May 6, 2019, Plaintiff sent a letter complying with IND. CODE § 24-5-0.5-5(a) to Ford.

COUNT 31

VIOLATION OF THE IOWA PRIVATE RIGHT
OF ACTION FOR CONSUMER FRAUDS ACT
(IOWA CODE § 714H.1 *ET SEQ.*)

373.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

374.   This claim is brought by Plaintiff on behalf of Iowa purchasers who are members of the Class.

375.   The Iowa Private Right of Action for Consumer Frauds Act (Iowa CFA) prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the

misrepresentation, concealment, suppression, or omission of a material fact, with

the intent that others rely upon the unfair practice, deception, fraud, false pretense,

false promise, misrepresentation, concealment, suppression or omission in

connection with the advertisement, sale, or lease of consumer merchandise." IOWA

CODE § 714H.3.

376.   Ford is a "person" under IOWA CODE § 714H.2(7).

377.   Plaintiff and Iowa Class members are "consumers" as defined by

IOWA CODE § 714H.2(3) who purchased or leased one or more Affected Vehicles.

378.   Pursuant to IOWA CODE § 714H.5, Plaintiff seeks an order enjoining

Ford's unfair and/or deceptive acts or practices, actual damages, statutory damages

up to three times the amount of actual damages awarded as a result of Ford's

willful and wanton disregard for the rights of others, attorneys' fees, and other such

equitable relief as the court deems necessary to protect the public from further

violations of the Iowa CFA.

COUNT 32

VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
(KAN. STAT. ANN. § 50-623 *ET SEQ.*)

379.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

380.   This claim is brought by Plaintiff on behalf of Kansas purchasers who

are members of the Class.

381.   The Kansas Consumer Protection Act (Kansas CPA) states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-626(a). Deceptive acts or practices include but are not limited to "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" and "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." KAN. STAT. ANN. § 50-626.

382.   Plaintiff and Kansas Class members are "consumers" within the meaning of KAN. STAT. ANN. § 50-624(b) who purchased or leased one or more Affected Vehicles.

383.   Each sale or lease of an Affected Vehicle to Plaintiff was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

384.   Pursuant to KAN. STAT. ANN. § 50-634, Plaintiff seeks monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.

385.   Plaintiff also seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under KAN. STAT. ANN. § 50-623 *et seq.*

COUNT 33

VIOLATIONS OF THE KENTUCKY
CONSUMER PROTECTION ACT
(KY. REV. STAT. § 367.110 *ET SEQ.*).

386.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

387.   Plaintiff brings this Count on behalf of the Kentucky Class members.

388.   Ford, Plaintiff, and the Kentucky Class are "persons" within the meaning of the KY. REV. STAT. § 367.110(1).

389.   Ford engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

390.   The Kentucky Consumer Protection Act (Kentucky CPA) makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …." KY. REV. STAT. § 367.170(1). In the course of Ford's business, it willfully failed to disclose and actively concealed the true mileage of the Affected Vehicles, which is less than a reasonable consumer would expect in light of Ford's advertising campaign, and that the Affected Vehicles contained a mileage cheat device to continually misrepresent the Affected Vehicles' mileage to the consumer. Accordingly, Ford engaged in deceptive business practices prohibited by the Kentucky CPA.

391.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Class members were deceived by Ford's misrepresentation of fuel efficiency and

inclusion of a mileage cheat device to continually misrepresent the vehicle's fuel economy, as described above.

392.   Plaintiff and Class members reasonably relied upon Ford's false misrepresentations. They had no way of knowing that Ford's representations were false and gravely misleading. As alleged herein, Ford engaged in extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Ford's deception on their own.

393.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

394.   Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

395.   Ford intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Class.

396.   Ford knew or should have known that its conduct violated the Kentucky CPA.

397.   Ford owed Plaintiff and the Class a duty to disclose the truth about its mileage manipulation because Ford:

        a.    Possessed exclusive knowledge that it manipulated the fuel economy representations and created the mileage cheat device in the Affected Vehicles;

        b.    Intentionally concealed the foregoing from Plaintiff and the Class; and/or

- 102 -

c.   Made incomplete representations that it manipulated the mileage certifications in the Affected Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

398.   Ford had a duty to disclose the true mileage and the presence of a mileage cheat device in the Affected Vehicles, because Plaintiff and the other Class members relied on Ford's material representations that the Affected Vehicles they were purchasing were fuel efficient, and free from defects or a cheat device.

399.   Ford's conduct proximately caused injuries to Plaintiff and the other Class members.

400.   Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Ford's conduct in that Plaintiff and the other Class members overpaid for the Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

401.   Ford's violations present a continuing risk to Plaintiff as well as to the general public, in terms of continued misrepresentations, continued excess fuel consumption, and continued increases in pollution, and therefore Ford's unlawful acts and practices complained of herein affect the public interest.

402.   Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiff and the Class seek to recover actual damages in an amount to be determined at trial; declaratory

relief; attorneys' fees; and any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

COUNT 34

VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(LA. REV. STAT. § 51:1401 *ET SEQ.*)

403.  Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

404.  This claim is brought by Plaintiff on behalf of Louisiana purchasers who are members of the Class

405.  Ford, Plaintiff, and the Louisiana Class members are "persons" within the meaning of LA. REV. STAT. § 51:1402(8).

406.  Plaintiff and Louisiana Class members are "consumers" within the meaning of LA. REV. STAT. § 51:1402(1).

407.  Ford engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(9).

408.  The Louisiana Unfair Trade Practices and Consumer Protection Law (Louisiana CPL) makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A). Ford participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

409.  Ford also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of Affected

Vehicles.

410.    Ford's unfair or deceptive acts or practices were likely to and did in

fact deceive reasonable consumers.

411.    Ford intentionally and knowingly misrepresented material facts

regarding the Affected Vehicles with intent to mislead Plaintiff and the Louisiana

Class.

412.    Ford knew or should have known that its conduct violated the

Louisiana CPL.

413.    Ford owed Plaintiff a duty to disclose the emissions in the Affected

Vehicles, because Ford:

> a.    Possessed exclusive knowledge;
>
> b.    Intentionally concealed the foregoing from
>        Plaintiff; and/or
>
> c.    Made incomplete representations about the fuel
>        efficiency and performance of the Affected
>        Vehicles, while purposefully withholding material
>        facts from Plaintiff that contradicted these
>        representations, and including a mileage cheat
>        device that actively and continually misrepresents
>        the fuel economy of the Affected Vehicles.

010825-11/1133054 V1

- 105 -

414.    Plaintiff and the Louisiana Class suffered ascertainable loss caused by Ford's misrepresentations and its concealment of and failure to disclose material information.

415.    As a direct and proximate result of Ford's violations of the Louisiana CPL, Plaintiff and the Louisiana Class have suffered injury-in-fact and/or actual damage.

416.    Pursuant to LA. REV. STAT. § 51:1409, Plaintiff and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for Ford's knowing violations of the Louisiana CPL; an order enjoining Ford's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

## COUNT 35

### FRAUDULENT CONCEALMENT
### (BASED ON LOUISIANA LAW)

417.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

418.    This claim is brought by Plaintiff on behalf of Louisiana purchasers who are members of the Class.

419.    Ford concealed and suppressed material facts concerning the quality of its vehicles and the fuel economy of the Affected Vehicles.

420.   Because of the concealment and/or suppression of the facts, and the inclusion of a mileage cheat device, Plaintiff and the Louisiana Class sustained damage because they overpaid for their vehicles and own vehicles that diminished in value as a result of Ford's concealment, and suffered and continue to suffer increased fuel costs over what was represented by Ford. Had they been aware of the true facts, Plaintiff and Class members would not have purchased or leased the Affected Vehicles or would have paid less.

COUNT 36

VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
(ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)

421.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

422.   This claim is brought by Plaintiff on behalf of Maine purchasers who are members of the Class.

423.   The Maine Unfair Trade Practices Act (Maine UTPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." ME. REV. STAT. ANN. TIT. 5, § 207.

424.   Ford, Plaintiff, and Maine Class members are "persons" within the meaning of ME. REV. STAT. ANN. TIT. § 5, 206(2).

425.   Ford is engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN. TIT. § 5, 206(3).

426.    Pursuant to ME. REV. STAT. ANN. TIT. 5, § 213, Plaintiff seeks an order enjoining Ford's unfair and/or deceptive acts or practices.

427.    Plaintiff will send a letter complying with ME. REV. STAT. ANN. TIT. 5, § 213(1-A) to Ford. This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of Maine purchasers who are members of the Class.

COUNT 37

VIOLATION OF THE MARYLAND
CONSUMER PROTECTION ACT
(MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*)

428.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

429.    This claim is brought by Plaintiff on behalf of Maryland purchasers who are members of the Class.

430.    The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," MD. CODE ANN., COM. LAW § 13-301, regardless of whether the consumer is actually deceived or damaged, MD. CODE ANN., COM. LAW § 13-302.

431.   Ford, Plaintiff, and Maryland Class members are "persons" within the meaning of MD. CODE ANN., COM. LAW § 13-101(h).

432.   Pursuant to MD. CODE ANN., COM. LAW § 13-408, Plaintiff seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

COUNT 38

VIOLATION OF THE MICHIGAN
CONSUMER PROTECTION ACT
(MICH. COMP. LAWS § 445.903 *ET SEQ.*)

433.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

434.   This claim is brought by Plaintiff on behalf of Michigan purchasers who are members of the Class.

435.   The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS

§ 445.903(1). Ford failed to disclose that the Affected Vehicles do not have the advertised fuel economy, contain a mileage cheat device; and that fuel economy were far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable vehicle.

436.   Plaintiff and Michigan Class members are "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

437.   Ford is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

438.   Plaintiff seeks injunctive relief to enjoin Ford from continuing their unfair and deceptive acts; monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

439.   Plaintiff also seeks punitive damages because Ford carried out despicable conduct with willful and conscious disregard of the rights of others. Ford's conduct constitutes malice, oppression, and fraud warranting punitive damages.

COUNT 39

VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER
FRAUD ACT
(MINN. STAT. § 325F.68 *ET SEQ.*)

440.    Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

441.    This claim is brought by Plaintiff on behalf of Minnesota purchasers

who are members of the Class.

442.    The Minnesota Prevention of Consumer Fraud Act (Minnesota CFA)

prohibits "[t]he act, use, or employment by any person of any fraud, false pretense,

false promise, misrepresentation, misleading statement or deceptive practice, with

the intent that others rely thereon in connection with the sale of any merchandise,

whether or not any person has in fact been misled, deceived, or damaged thereby."

MINN. STAT. § 325F.69(1).

443.    Each purchase or lease of an Affected Vehicle constitutes

"merchandise" within the meaning of MINN. STAT. § 325F.68(2).

444.    Pursuant to MINN. STAT. § 8.31(3a), Plaintiff seeks actual damages,

attorneys' fees, and any other just and proper relief available under the Minnesota

CFA.

445.    Plaintiff also seeks punitive damages under MINN. STAT.

§ 549.20(1)(a) given the clear and convincing evidence that Ford's acts show

deliberate disregard for the rights of others.

- 111 -

COUNT 40

VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES
ACT
(MINN. STAT. § 325D.43-48 *ET SEQ.*)

446.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

447.   This claim is brought by Plaintiff on behalf of Minnesota purchasers

who are members of the Class.

448.   The Minnesota Deceptive Trade Practices Act (Minnesota DTPA)

prohibits deceptive trade practices, which include "[t]he act, use, or employment

by any person of any fraud, false pretense, false promise, misrepresentation,

misleading statement or deceptive practice, with the intent that others rely thereon

in connection with the sale of any merchandise, whether or not any person has in

fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1).

449.   Pursuant to MINN. STAT. § 8.31(3a), Plaintiff seeks actual damages,

attorneys' fees, and any other just and proper relief available under the Minnesota

CFA.

450.   Plaintiff also seeks punitive damages under MINN. STAT.

§ 549.20(1)(a) given the clear and convincing evidence that Ford's acts show

deliberate disregard for the rights of others.

010825-11/1133054 V1

COUNT 41

VIOLATION OF THE MISSISSIPPI
CONSUMER PROTECTION ACT
(MISS. CODE. ANN. § 75-24-1 *ET SEQ.*)

451.    Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

452.    This claim is brought by Plaintiff on behalf of Mississippi purchasers

who are members of the Class.

453.    The Mississippi Consumer Protection Act (Mississippi CPA) prohibits

"unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN.

§ 75-24-5(1). Unfair or deceptive practices include but are not limited to

"(e) Representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities that they do not have or

that a person has a sponsorship, approval, status, affiliation, or connection that he

does not have"; "(g) Representing that goods or services are of a particular

standard, quality, or grade, or that goods are of a particular style or model, if they

are of another"; and "(i) Advertising goods or services with intent not to sell them

as advertised and certified." MISS. CODE ANN. § 75-24-5(2).

454.    Plaintiff seeks actual damages in an amount to be determined at trial

and any other just and proper relief available under the Mississippi CPA.

COUNT 42

VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101 *ET SEQ.*)

455.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

456.    This claim is brought by Plaintiff on behalf of Montana purchasers who are members of the Class.

457.    The Montana Unfair Trade Practices and Consumer Protection Act (Montana CPA) makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

458.    Ford, Plaintiff, and Montana Class members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

459.    Plaintiff and Montana Class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

460.    The sale or lease of each Affected Vehicle at issue occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and Ford committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

461.    Because Ford's unlawful methods, acts, and practices have caused Plaintiff to suffer an ascertainable loss of money and property, Plaintiff seeks from

Ford: the greater of actual damages or $500; discretionary treble damages; and reasonable attorneys' fees.

462.   Plaintiff additionally seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

COUNT 43

VIOLATION OF THE NEBRASKA
CONSUMER PROTECTION ACT
(NEB. REV. STAT. § 59-1601 *ET SEQ.*)

463.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

464.   This claim is brought by Plaintiff on behalf of Nebraska purchasers who are members of the Class.

465.   The Nebraska Consumer Protection Act (Nebraska CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.

466.   Ford, Plaintiff, and Nebraska Class members are "person[s]" under NEB. REV. STAT. § 59-1601(1).

467.   Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

468.   Because Ford's conduct caused injury to Plaintiff's property through violations of the Nebraska CPA, Plaintiff seeks recovery of actual damages as well

010825-11/1133054 V1

as enhanced damages up to $1,000, an order enjoining Ford's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

COUNT 44

VIOLATION OF THE NEVADA DECEPTIVE
TRADE PRACTICES ACT
(NEV. REV. STAT. § 598.0903 *ET SEQ.*)

469.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

470.   This claim is brought by Plaintiff on behalf of Nevada purchasers who are members of the Class.

471.   The Nevada Deceptive Trade Practices Act (Nevada DTPA) prohibits deceptive trade practices. NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "[a]dvertises goods or services with intent not to sell or lease them as advertised and certified"; or "[k]nowingly

makes any other false representation in a transaction." NEV. REV. STAT.

§§ 598.0915–598.0925. Ford failed to disclose that the Affected Vehicles did not

have the advertised and certified fuel economy and also contained a mileage cheat

device to continually misrepresent the mileage to the consumer; and (4) that the

fuel economy was far worse than a reasonable consumer would expect given the

premium paid for these vehicles over a comparable vehicle.

472.   Accordingly, Plaintiff seeks their actual damages, punitive damages,

an order enjoining Ford's deceptive acts or practices, costs of Court, attorney's

fees, and all other appropriate and available remedies under the Nevada DTPA.

NEV. REV. STAT. § 41.600.

## COUNT 45
### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
#### (N.H. REV. STAT. ANN. § 358-A:1 *ET SEQ.*)

473.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

474.   This claim is brought by Plaintiff on behalf of New Hampshire

purchasers who are members of the Class.

475.   The New Hampshire Consumer Protection Act (New Hampshire

CPA) prohibits a person, in the conduct of any trade or commerce, from "using any

unfair or deceptive act or practice," including "but . . . not limited to, the

following: . . . [r]epresenting that goods or services have . . . characteristics, . . .

- 117 -

uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised and certified." N.H. REV. STAT. § 358-A:2.

476. Ford, Plaintiff, and New Hampshire Class members are "persons" under N.H. REV. STAT. ANN. § 358-A:1.

477. Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. ANN. § 358-A:1.

478. Because Ford's willful conduct caused injury to Plaintiff's property through violations of the New Hampshire CPA, Plaintiff seeks recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining Ford's unfair and/or deceptive acts and practices; and any other just and proper relief under N.H. REV. STAT. ANN. § 358-A:10.

COUNT 46
VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
(N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)

479. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

480. This claim is brought by Plaintiff on behalf of New Mexico purchasers who are members of the Class.

- 118 -

481.   The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D). Ford failed to disclose that the Affected Vehicles did not have the advertised and certified fuel economy and also contained a mileage cheat device to continually misrepresent their fuel economy to the driver; and that the fuel economy was far worse than a reasonable consumer would expect given the premium paid for these vehicles over a comparable vehicle.

482.   Ford, Plaintiff, and New Mexico Class members are "person[s]" under N.M. STAT. ANN. § 57-12-2.

483.   Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

484.   Because Ford's unconscionable, willful conduct caused actual harm to Plaintiff, Plaintiff seeks recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and

costs, as well as all other proper and just relief available under N.M. STAT. ANN.

§ 57-12-10.

## COUNT 47

### VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
### (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

485.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

486.    This claim is brought by Plaintiff on behalf of North Carolina purchasers who are members of the Class.

487.    North Carolina's Unfair and Deceptive Acts and Practices Act (the North Carolina Act) broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a).

488.    Ford engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

489.    Plaintiff seeks an order for treble their actual damages, an order enjoining Ford's unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

## COUNT 48

### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-02)

490.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

- 120 -

491.   This claim is brought by Plaintiff on behalf of North Dakota purchasers who are members of the Class.

492.   The North Dakota Consumer Fraud Act (North Dakota CFA) makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. CENT. CODE § 51-15-02.

493.   Ford, Plaintiff, and North Dakota Class members are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

494.   Ford engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

495.   Ford knowingly committed the conduct described above and therefore, under N.D. CENT. CODE § 51-15-09, Ford is liable to Plaintiff for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiff further seeks an order enjoining Ford's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

COUNT 49

VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
(OHIO REV. CODE ANN. § 1345.01 *ET SEQ.*)

496.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

497.   This claim is brought by Plaintiff on behalf of Ohio purchasers who are members of the Class.

498.   Ohio Consumer Sales Practices Act (Ohio CSPA), OHIO REV. CODE ANN. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits (1) representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Affected Vehicles with the intent not to sell them as advertised and certified, and (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer. OHIO REV. CODE ANN. § 1345.02.

499.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Ford in this Complaint, including but not limited to the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive,

and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following:

a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b.    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

d.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f.    *State ex rel. Jim Petro v. Craftmatic Org., Inc.* (OPIF #10002347);

g.    *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h.    *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i.    *Brinkman v. Mazda Motor of Am., Inc.* (OPIF #10001427);

j.    *Khouri v. Don Lewis* (OPIF #100001995);

k.    *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l.    *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

m.    *Brown v. Spears* (OPIF #10000403).

500.   Ford is a "supplier" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

501.   Plaintiff and Ohio Class members are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D), and their purchase or lease of one or more Affected Vehicles is a "consumer transaction" within the meaning of OHIO REV. CODE ANN. § 1345.01(A).

502.   As a result of the foregoing wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual and statutory damages, an order enjoining Ford's deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE ANN. § 1345.09 *et seq.*

## COUNT 50
### VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (OR. REV. STAT. § 646.605 *ET SEQ.*)

503.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

504.   This claim is brought by Plaintiff on behalf of Oregon purchasers who are members of the Class.

505.   The Oregon Unfair Trade Practices Act (Oregon UTPA) prohibits a person from, in the course of the person's business, doing any of the following: representing that goods have characteristics uses, benefits, or qualities that they do

not have; representing that goods are of a particular standard or quality if they are

of another; advertising goods or services with intent not to provide them as

advertised and certified; and engaging in any other unfair or deceptive conduct in

trade or commerce. OR. REV. STAT. § 646.608(1). Ford failed to disclose that the

Affected Vehicles do not have the advertised and certified fuel economy; and (4)

that emissions and fuel economy were far worse than a reasonable consumer would

expect given the premium paid for these vehicles over a comparable vehicle.

506.   Ford is a person within the meaning of OR. REV. STAT. § 646.605(4).

507.   Each Affected Vehicle is a "good" obtained primarily for personal

family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

508.   Plaintiff is entitled to recover the greater of actual damages or $200

pursuant to OR. REV. STAT. § 646.638(1). Plaintiff is also entitled to punitive

damages because Ford engaged in conduct amounting to a particularly aggravated,

deliberate disregard of the rights of others.

## COUNT 51

### VIOLATION OF THE RHODE ISLAND
### UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION ACT
### (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)

509.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

510.   This claim is brought by Plaintiff on behalf of Rhode Island

purchasers who are members of the Class.

- 125 -

511.    Rhode Island's Unfair Trade Practices and Consumer Protection Act

(Rhode Island CPA) prohibits "unfair or deceptive acts or practices in the conduct

of any trade or commerce," including "[e]ngaging in any act or practice that is

unfair or deceptive to the consumer" and "[u]sing any other methods, acts or

practices which mislead or deceive members of the public in a material respect."

R.I. GEN. LAWS § 6-13.1-1(6).

512.    Ford, Plaintiff, and Rhode Island Class members are "persons" within

the meaning of R.I. GEN. LAWS § 6-13.1-1(3).

513.    Ford was engaged in "trade" and "commerce" within the meaning of

R.I. GEN. LAWS § 6-13.1-1(5).

514.    Plaintiff purchased or leased Affected Vehicles primarily for personal,

family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-

5.2(a).

515.    Plaintiff is entitled to recover the greater of actual damages or $200

pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a). Plaintiff also seeks punitive damages

at the discretion of the Court.

## COUNT 52
### VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW
#### (S.D. CODIFIED LAWS § 37-24-6)

516.    Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

- 126 -

517.    This claim is brought by Plaintiff on behalf of South Dakota purchasers who are members of the Class.

518.    The South Dakota Deceptive Trade Practices and Consumer Protection Law (South Dakota CPL) prohibits deceptive acts or practices, which include "[k]nowingly act[ing], us[ing], or employ[ing] any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS §§ 37-24-6(1), 37-24-31.

519.    Under S.D. CODIFIED LAWS § 37-24-31, Plaintiff is entitled to a recovery of their actual damages suffered as a result of Ford's acts and practices.

## COUNT 53
### VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)

520.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

521.    This claim is brought by Plaintiff on behalf of Vermont purchasers who are members of the Class.

522.    The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. TIT. 9, § 2453(a).

523.   Ford was a seller within the meaning of VT. STAT. ANN. TIT. 9,

§ 2451(a)(c).

524.   Plaintiff is entitled to recover "appropriate equitable relief" and "the

amount of [their] damages, or the consideration or the value of the consideration

given by [them], reasonable attorney's fees, and exemplary damages not exceeding

three times the value of the consideration given by [them]," pursuant to VT. STAT.

ANN. TIT. 9, § 2461(b).

## COUNT 54

### VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. § 59.1-196 *ET SEQ.*)

525.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this complaint.

526.   This claim is brought by Plaintiff on behalf of Virginia purchasers

who are members of the Class.

527.   The Virginia Consumer Protection Act (Virginia CPA) lists prohibited

"practices," which include "[u]sing any other deception, fraud, false pretense, false

promise, or misrepresentation in connection with a consumer transaction." VA.

CODE ANN. § 59.1-200.

528.   Ford is a "supplier" under VA. CODE ANN. § 59.1-198.

529.   Each sale and lease of an Affected Vehicle was a "consumer

transaction" within the meaning of VA. CODE ANN. § 59.1-198.

- 128 -

530.   Pursuant to Va. Code Ann. § 59.1-204, Plaintiff seeks monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff. Because Ford's conduct was committed willfully and knowingly, Plaintiff is entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

531.   Plaintiff also seeks an order enjoining Ford's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under Va. Code Ann. § 59.1-204 *et seq.*

COUNT 55

VIOLATION OF THE WASHINGTON
CONSUMER PROTECTION ACT
(Wash. Rev. Code Ann. § 19.86.010 *ET SEQ.*)

532.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

533.   This claim is brought by Plaintiff on behalf of Washington purchasers who are members of the Class.

534.   The Washington Consumer Protection Act (Washington CPA) broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code. Ann. § 19.96.010.

535.   Ford committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of WASH. REV. CODE. ANN. § 19.96.010.

536.   Ford is liable to Plaintiff for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under WASH. REV. CODE. ANN. § 19.86.090.

COUNT 56
VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 110.18)

537.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

538.   This claim is brought by Plaintiff on behalf of Wisconsin purchasers who are members of the Class.

539.   The Wisconsin Deceptive Trade Practices Act (Wisconsin DTPA) prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1).

540.   Ford is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

541.   Plaintiff and Wisconsin Class members are members of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiff purchased or leased one or more Affected Vehicles.

542.   Plaintiff is entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because Ford's conduct was committed knowingly and/or intentionally, Plaintiff is entitled to treble damages.

543.   Plaintiff also seeks court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

## COUNT 57

### VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
### (WYO. STAT. § 40-12-105 *ET SEQ.*)

544.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

545.   This claim is included here for notice purposes only. Once the statutory notice period has expired, Plaintiff will amend his complaint to bring this claim on behalf of Wyoming purchasers who are members of the Class.

546.   Pursuant to WYO. STAT. § 40-12-108(a), once the statutory notice period has expired, Plaintiffs will amend to seek monetary relief against Ford measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming CPA.

547.   Plaintiff will send a letter complying with WYO. STAT. § 45-12-109 to Ford. If Ford fail to remedy their unlawful conduct, Plaintiff will seek all damages and relief to which Plaintiff is entitled.

010825-11/1133054 V1

548.   Notice pursuant to: Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5, § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A-6-106(b); and Wyoming Statutes § 40-12-109 was sent to Ford on May 6, 2019.

COUNT 58
BREACH OF EXPRESS WARRANTY

549.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

550.   Defendant was a merchant with respect to motor vehicles.

551.   In selling its vehicles, Ford expressly warranted in advertisements, including in the stickers affixed to the windows of its vehicles, that its vehicles provided a favorable fuel economy of specific MPGs, depending on the vehicle.

552.   These affirmations and promises were part of the basis of the bargain between the parties.

553.   Defendant breached these warranties arising from its advertisements, including window stickers, because the fuel economy ratings for its vehicles were inaccurate.

554.   As a direct and proximate result of Ford's breach of express warranties, Plaintiff and members of the Class have been damaged in an amount to be determined at trial.

## COUNT 59
## FRAUD

555.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

556.   Defendant affirmatively misrepresented and concealed material facts concerning the fuel economy of its vehicles.

557.   Defendant had a duty to disclose the true fuel economy based on its superior knowledge and affirmative misrepresentations to the contrary.

558.   Defendant affirmatively misrepresented and/or actively concealed material facts, in whole or in part, intending to induce Plaintiff and members of the Class to purchase their vehicles and at a higher price than they otherwise would have.

559.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

- 133 -

COUNT 60

NEGLIGENT MISREPRESENTATION

560.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

561.   Defendant made fuel economy representations to Plaintiff and members of the Class that were not true.

562.   Defendant had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiff and Class members rely on these misrepresentations.

563.   Plaintiff reasonably relied on Defendant's representations and as a result Plaintiff and Class member were harmed.

COUNT 61

UNJUST ENRICHMENT

564.   Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

565.   Because of Ford's wrongful acts and omissions, Ford charged a higher price for its vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiff.

566.   Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and other Class members.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

010825-11/1133054 V1

567.   Plaintiff, therefore, seeks an order requiring Ford to make restitution to him and other members of the Class.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.   Determine this action may be maintained as a Class action with respect to the Class and certify it as such under Rule 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff as Class Representative and their counsel as Class Counsel;

B.   Declare, adjudge and decree the conduct of the Defendant as alleged herein to be unlawful, unfair, and deceptive;

C.   Notify all Class members about the lower fuel economy ratings and higher emissions at Ford's expense and provide correct fuel economy and emissions ratings;

D.   Award Plaintiff and Class members restitution of all monies paid to Defendant as a result of unlawful, deceptive, and unfair business practices;

E.   Award Plaintiff and Class members actual, compensatory damages as proven at trial;

010825-11/1133054 V1

F.      Award Plaintiff and Class members reasonable attorneys' fees, costs, and pre- and post-judgment interest;

G.      Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles; and

H.      Such other or further relief as may be appropriate.

DEMAND FOR JURY TRIAL

Plaintiff hereby demand a jury trial for all claims so triable.

DATED: June 4, 2019                    Respectfully Submitted,

By: */s/ Steve W. Berman*
    Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
One West 4th Street, 18th Floor
Cincinnati, OH 45202
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

Jason Thompson
SOMMERS SCHWARTZ, P.C.
One Tower Square, Suite 1700
Southfield, MI  48076
Telephone No.: (248) 355-0300
jthompson@sommerspc.com

010825-11/1133054 V1

Robert C. Hilliard
HILLIARD MARTINEZ GONZALES LLP
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
Telephone No.: (361) 882-1612
Facsimile No.: (361) 882-3015
hmgservice@hmglawfirm.com

- 137 -